## CHARLES P. ROBBINS v. TOWN OF HOMER.[1]

June 16, 1905.

Nos. 14,308—(68).

**Town Poor—Medical Attendance.**

Where the town supervisors are required to provide for the care and support of the poor therein, and have no regular physician to attend its paupers, and a pauper suffers from an accident which requires the immediate attention of a surgeon, who renders services to relieve the necessity, he may recover reasonable compensation from the town, although he had not been requested by the authorities to attend the patient.

Appeal by plaintiff from a judgment of the district court for Winona county dismissing the action, entered pursuant to the order of Snow, J. Reversed and remanded for further proceedings.

*William Burns,* for appellant.

*George T. Simpson* and *Earl Simpson,* for respondent.

[1] Reported in 103 N. W. 1023.

LOVELY, J.

This is an action against a town having legal charge of a pauper to recover for his medical and surgical treatment furnished by a physician. There was a general demurrer to the complaint, which was sustained, and judgment ordered dismissing the action. This appeal is from that judgment.

It is set forth that Richard Lessard was a resident of the town of Homer, and for a period of five years prior thereto had a legal settlement therein; that the plaintiff, a physician, rendered surgical and medical treatment for Lessard, who had had no means of support for more than one year prior thereto, and was during such time a public charge upon the town; that under the laws of the state the supervisors of Homer, by virtue of their office, were superintendents of the poor; that the medical and surgical treatment rendered Lessard was under great emergency. It also appears from an account rendered, attached to an exhibit, that Lessard was suffering from a fracture of the right hip joint, and was taken (presumably from necessity) immediately to the Winona Hospital by the physician, and thereafter removed to the county poor farm by the town authorities. While the allegations of fact showing the emergency might have been more fully set forth, it still, upon a liberal construction of the challenged pleading, appears to have been a case where there was an urgent requirement for a physician's services, and the surgical treatment bestowed. Moreover, upon the views of the trial court in its memorandum, the liability of defendant was regarded as solely statutory, and that it was essential there should be a previous determination by the supervisors that the poor person was entitled to the physician's aid by the town, and to what extent such relief should have been granted. Upon this ground the court withheld the right of plaintiff to amend, since the alleged services were rendered without direction or authority of the supervisors.

The matter being thus presented we shall treat the exigency for the services performed as being urgent, imperative, and admitting of no delay. The able counsel for the defendant insists that a request by the supervisors of the plaintiff was necessary, even though the accident in which he was injured occurred at night, and distinctive action by the board would probably have required such delay as would have rendered any benefit to the patient very doubtful.

From the first organization of our state, the duty to take care of the needy and indigent has been recognized, and delegated to certain public officials in their representative capacity. From the start the political division charged with this obligation has been the county, and, to effectuate this, the commissioners of the several counties of the state were declared to be vested with the "exclusive superintendence of the poor in their respective counties." Section 1, c. 16, St. 1851. This language has been followed ever since, in the expressed imposition of the duty which the state assumed and has always recognized in accordance with the humane purposes of all civilized governments. In some instances the plan has been departed from, where the citizens of particular counties secured legislative changes for the supposed reason that the burdens on the towns were unjustly large, as compared with those of cities therein. Such was the case in Winona county, where, under chapter 479, p. 1082, Sp. Laws 1891, the supervisors of the several towns were made superintendents of the poor, instead of the county commissioners. This act further provides, in substance, that such supervisors, if they desire, may use the county poorhouse which had theretofore been provided for paupers, in any desirable case. But it seems in this particular instance that the poverty of the indigent person was not made the cause of removal to the county poorhouse until after his injury. No provision was made for the appointment of a physician for the defendant town, as we are authorized in assuming from the record and argument of counsel.

In chapter 172, p. 177, Laws 1899, it is prescribed that county physicians shall be appointed by the county commissioners to attend upon the poor when necessary; and it was therein specifically provided that, in case of emergency, where any poor person had become a county charge, and should be suddenly injured or afflicted, and so require immediate treatment before the arrival of the proper county physician, any reputable or duly licensed surgeon who should prescribe for or treat such injured or afflicted person might receive compensation from the board, with added provisions for notice by the emergency physician. Then follows a further proviso that this act shall not apply to counties caring for the poor by the township system. The title to this act makes no reference to other than county physicians. and the last proviso was undoubtedly thrown in, ex industria, to protect counties, rather than to lay down or limit a rule of liability with

reference to towns where such municipalities are required to support the poor. The view is not to be tolerated, under well-settled constitutional limitations, that a class distinction in behalf of counties. and to discriminate as to towns was created by this proviso, so it may be dismissed as having no tendency to show that there was a legislative purpose to relieve the town supervisors from the obligation imposed upon the county board in emergency cases. The most that can be said of this legislation relative to county physicians is that it is an indication of the policy of the state to provide for an apparent and reasonable requirement to protect the unfortunate poor where injury and sudden sickness may prevent the attendance of the regularly appointed physician whose duty is to look after these charges of the state, and without any such statute the reason therefor is plain and apparent. The impulses of humanity, the dictates of natural justice. as well as the pecuniary interest of the municipal body upon whom the duty is imposed, demand that, where the officials having charge of the poor are unable to act in a case of pressing urgency, the course indicated ought to be pursued, and should be justified, if it can be done upon any reasonable legal grounds.

The duty to provide for the poor thus imposed by statute was undoubtedly intended to regulate the obligation, rather than to permit an evasion of it. This goes upon statement. Neither the county commissioners, where the county system prevails, nor the town supervisors, where they are the superintendents of the poor, can turn their backs upon the proper claim of the poor person. The officials may and should exercise their judgment to prevent improper persons from having relief, but for those who require it they are required to perform this function honestly and efficiently. But a case may arise where such officials cannot, in the nature of things, perform the trust. Under such circumstances, it does not seem just or consistent with sound public policy that the duty should not be performed at all, nor can it be said that the unfortunate pauper who has met with an accident requiring instant succor is to be remediless. The county or town must provide for him as soon as may be. To decline this mandate of humanity and duty wilfully by those upon whom it is imposed would subject such officials to prosecution for misconduct in office.

The same reason exists in the case of the poor of a town as of a

county for calling a physician where the exigency exists, but in the one instance it has been provided for; in the other it has not. It is true that the obligations to provide for the poor are statutory. These, as we have indicated, are matters of regulation; but, where there can be no regulation from the very nature of the case, it must be that necessity will supersede the exercise of statutory authority, and immediate aid for the sick person should be furnished. A deprivation of it might inure not only to injure the poor person, but to the detriment of the public, for delay in the treatment of the injured party might entail added pecuniary burdens.

It is true that ordinarily there must be a request from a person authorized to make the same to constitute a basis for contract liability, but there are some exceptions to this rule, as where a person lies under a moral and legal obligation to do an act, and another does it for him, under such circumstances of urgent necessity that humanity and decency admit of no time for delay. Here the law will imply a promise to pay without proof that it has been made, when there was an expectation of reimbursement. 22 Am. & Eng. Enc. (2d Ed.) 1009. A very familiar illustration of this rule is where a person furnishes the means of burial of the dead, when no request to do so comes from the person legally liable to perform the obligation. In such cases it has been held that the person furnishing the services may recover to the extent of the expenditures incurred. Gould v. Moulahan, 53 N. J. Eq. 341, 33 Atl. 483; Bradshaw v. Beard, 12 C. B. (N. S.) 344; Ambrose v. Kerrison, 10 C. B. 776; Jenkins v. Tucker, 1 H. Bl. 90; Rogers v. Price, 3 Y. & J. *28; Patterson v. Patterson, 59 N. Y. 574.

If Lessard, the poor person in this instance, had died, and the supervisors had been absent, we have little doubt that a person providing for his burial would have a legal claim against the town; and, upon the same reasons, why not a physician whose ministrations in a pressing emergency seek to avoid what may result in his death. The supervisors upon whom the duty to secure the physician was imposed under legal as well as moral obligations had not provided for the same, and we have no doubt that it should be held that the physician who immediately answered the call of emergency, perhaps to save life, or diminish the increase of expenditures against the public, would have a valid claim for compensation.

Having reached the conclusion that it was the duty of the supervisors of the defendant town to provide a physician, it reasonably appearing that an emergency arose where it was impossible for them to do so, we hold that the conclusion follows that there was a legal duty on the part of the town to pay such reasonable claim for the services of plaintiff as he may be able to establish, at least until the board of supervisors can be notified and appropriately act in the premises. The demurrer should have been overruled.

The judgment appealed from is reversed, and the cause remanded for further proceedings.