## DELLA HENDRICKSON v. TOWN OF QUEEN.[1]

### May 13, 1921.

### No. 22,192.

**Town liable for cost of nursing illegitimate minor.**

1. The serious illness of a minor, born out of wedlock and residing with an uncle in the defendant town, necessitated his removal to a hospital, where he was nursed by the plaintiff. She requested his al-

[1]Reported in 182 N. W. 952.

leged father to pay for her services after a stated time, but he declined. She then requested the defendant town to pay her, but it also declined. *Held*: That she was entitled to recover from the town whether the minor had a legal settlement therein or not and without reference to the question of his paternity.

**Father of such minor liable — town of legal settlement liable, when.**

2. If the minor had a father able to support him, the father was ultimately liable for the payment of the necessary expenses. If he had no relative who was liable and his legal settlement was in another town, such town could be compelled to pay the expenses.

**Child legitimatized by marriage of his parents.**

3. An illegitimate child is legitimatized by the marriage of his parents.

**Father liable for support of emancipated minor.**

4. The father of a minor, whom he has emancipated, is not thereby relieved from the obligation to support an indigent child imposed by G. S. 1913, § 3067.

Action in the district court for Polk county to recover $930 for services as nurse. The answer was a general denial. The case was tried before Watts, J., who made findings and ordered judgment for $220. From an order denying its motion for amended findings and conclusions of law or for a new trial, defendant town appealed. Affirmed.

*F. A. Grady*, for appellant.

*Charles Loring* and *G. A. Youngquist*, for respondent.

Lees, C.

Plaintiff sued for the value of her services rendered as a special nurse in caring for Gilbert Svaleson, an 18-year-old boy, whom she alleged was a public charge upon the defendant town. There was a trial by the court without a jury and findings in plaintiff's favor, and defendant has appealed from an order denying its alternative motion for amended findings or a new trial.

The findings were that on December 15, 1919, Gilbert was brought to a hospital at Fosston for medical treatment. His condition was such that it was necessary to place him immediately in the care of a special nurse and to keep him under her care until May 13, 1920. On February 8, 1920, plaintiff notified defendant of Gilbert's condition and that

she was caring for him. She rendered services as Gilbert's nurse between that date and March 24, 1920, of the reasonable value of $220, which has not been paid. On March 29, 1920, she filed with the town clerk a verified statement of her claim. There was a specific finding that between the eighth of February and the twenty-fourth of March, Gilbert was a public charge on the defendant town and had his settlement and place of residence therein.

The evidence showed that Gilbert was born in the town of Queen on March 8, 1901; that his mother was an unmarried woman, who in June, 1901, married John Svaleson and went with him to the town of Pine Lake, where they thereafter resided. Gilbert was treated as a member of Svaleson's family until his mother died in January, 1915, when he was taken to the home of his mother's brother in the town of Queen, where he lived up to the time of his removal to the hospital. Gilbert had about $250, which Svaleson took and deposited in a bank. Inferentially it appears that this money was expended for medical treatment for him. After it was exhausted, plaintiff asked Svaleson to pay her for her services, but he declined to do so. She then asked the town clerk of the town of Queen what she should do, and he told her to continue to nurse Gilbert—that the law was such that she would not lose her pay. His version of the conversation was that he told her the town would not pay her bill unless it had to. Svaleson is a prosperous farmer and still a resident of the town of Pine Lake.

The statutory law of this state is that every poor person shall be supported by his relatives named in the statute, in the order in which they are named; that, if they refuse or fail to support him, he shall receive such relief as he may require from the county, town, city or village in which he has a settlement; that a minor, not emancipated and settled in his own right, shall have the same settlement as the parent with whom he last resided, and that whenever a person, not having a legal settlement in the municipality where he is taken sick, is in need of immediate relief and is unable to depart therefrom and is so sick as to render it unsafe or inhuman to remove him, he shall receive relief from such municipality. The expense incurred becomes a charge on the county, and it may recover the same from the municipality in which such person has his settlement. Sections 3067, 3069, 3071, 3096, G. S.

1913. These statutory provisions have been considered in a number of cases.

In Town of Cordova v. Village of Le Sueur Center, 74 Minn. 515, 77 N. W. 290, 430, it was held that a town furnishing support to a poor person whose settlement is in another town may recover from the latter town, which may in turn recover from the relatives liable for his support.

In Robbins v. Town of Homer, 95 Minn. 201, 103 N. W. 1023, it was held that the duty of the town supervisors to provide medical care for a poor person, who is a charge on the town, does not depend upon a request to provide such care, that if, by reason of an emergency, immediate medical attention is necessary, the physician who furnishes it may recover from the town, although it did not employ him or authorize his employment.

In Manthey v. Schueler, 126 Minn. 87, 147 N. W. 824, Ann. Cas. 1915D, 241, it was said that, if the relative charged with the support of a poor person refuses to support him, a municipal body furnishing support may recover from such relative.

Tryon v. Dornfeld, 130 Minn. 198, 15 N. W. 307, L.R.A. 1915E, 844, holds that in an emergency case a physician rendering necessary services to a poor person may recover from a relative charged with his support, although the services were rendered without the knowledge of such relative.

In Brabec v. Boedigheimer, 132 Minn. 370, 157 N. W. 508, the court said that a father is liable to a physician for services rendered to his adult son, if the latter was a poor person unable to earn a livelihood, but otherwise he is not.

In Town of Iona v. County of Todd, 135 Minn. 183, 160 N. W. 669, it was intimated that, if a poor person had no legal settlement anywhere, the town in which he happened to be when he became a public charge was bound to support him.

The statutory provisions and these decisions lead to the conclusion that when Svaleson refused to provide the medical care and attention which Gilbert's serious illness required, the duty to so provide devolved on the town of Queen. We think the duty existed, whether he had a legal settlement in the town or not, and without reference to the ques-

tion of his paternity. If his legal settlement is in the town of Pine Lake, as defendant asserts it is, the statute provides a method of enforcing the liability of that town for the expenses incurred. County of Redwood v. City of Minneapolis, 126 Minn. 512, 148 N. W. 469. If Svaleson is Gilbert's father, he can be compelled to defray the expenses.

Citing a number of well considered cases, defendant's counsel earnestly contends that Gilbert was not a pauper, because he had a father with ample means to provide for his relief after he became sick and penniless. The language of section 3069, G. S. 1913, answers this contention. Even if Svaleson is Gilbert's father, his refusal to pay the boy's bills when asked to do so made it the duty of the public authorities to furnish the necessary medical care and treatment. Much was said in the argument about Gilbert's alleged emancipation. We do not regard that as a matter of great importance in view of the facts disclosed by the evidence. The proof was all to the effect that Svaleson is Gilbert's father. If he is, his marriage to Gilbert's mother legitimatized the boy. Section 7105, G. S. 1913. Granting that he emanicipated him, he did not thereby relieve himself from the duty which the law imposes on the father of a sick and indigent child. Section 3067, G. S. 1913. The question of emancipation became material only in determining whether Gilbert's settlement was in the town of Queen or the town of Pine Lake. The court found that it was in the former town, from which it may be inferred that it reached the conclusion that Gilbert had been emancipated. There was sufficient evidence to warrant such a conclusion.

We express no opinion respecting Svaleson's ultimate liability for the payment of the expenses of Gilbert's sickness except to say that, if he is the boy's father, he is liable. He is entitled, however, to his day in court when it is sought to charge him on the ground of his alleged parentage.

Order affirmed.