## BOARD OF COM'RS, GARFIELD COUNTY, v. ENID SPRINGS SANITARIUM & HOSPITAL.

No. 15474—Opinion Filed March 2, 1926.

**1. Evidence—Counties — Method of Caring for Poor in Emergency Cases—Admissibility.**

Where a board of county commissioners kept no record and took no action with reference to taking care of poor persons, it was not error to permit the method by which the county commissioners transacted business in emergency cases of the kind involved in this action to be shown.

**2. Paupers—Counties—Statutory Requirement to Care for Poor.**

The county commissioners of this state are by statute made overseers of the poor (section 8211, C. S. 1921). While exercising such duties the statute imposes upon them a positive obligation to see that the poor are properly and promptly relieved and taken care of in the manner provided by law (section 8212, C. S. 1921).

**3. Same—Claims—Presentation—Emergency Cases.**

The general rule is that in cases of emergency attendance of a pauper, a physician may hold the county liable although he acted without the request or the consent of the persons designated by statute as overseers of the poor, where such poor person requires the immediate attention of a physician who renders services to relieve the necessity; and where it appears that the board of county commissioners was not in session at the time, and that notice could not have been given to the board of county commissioners before rendering necessary medical and surgical services, the physician and surgeon may recover reasonable compensation from the county within the limit of the fund provided by law for such purpose.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the Enid Springs Sanitarium & Hospital against the Board of County Commissioners of Garfield County, Okla. Judg-

ment for plaintiff, and defendant brings error. Affirmed.

Dan Mitchell, A. L. Zinser, and V. P. Owroe, for plaintiff in error.

Carl Kruse, for defendant in error.

Opinion by PINKHAM, C. In this case the Enid Springs Sanitarium & Hospital, defendant in error, as plaintiff, brought an action against the board of county commissioners of Garfield county, plaintiff in error, as defendant. The parties will be referred to as they appeared in the trial court. The plaintiff is a corporation and owns and operates a hospital in the city of Enid, Garfield county, Dr. T. B. Hinson being the sole owner of such corporation. The plaintiff brought suit against the defendant, pleading four causes of action in the petition, the four claims being very similar and all growing out of medical care and surgical treatment given to four persons by the plaintiff in its hospital and claimed by the plaintiff to be paupers. The answer of the defendant consisted of a general denial as to each cause of action. The cause was tried to the court, a jury being waived. At the conclusion of the trial it was ordered and adjudged by the court that the plaintiff have and recover judgment against the defendant, the board of county commissioners of Garfield county, in the sum of $1,007.57, with interest thereon at the rate of .6 per cent. per annum from the 14th day of January, 1924, to which judgment of the court the defendant excepted. The defendant's motion for a new trial was overruled and the cause comes regularly on appeal of the defendant to this court by petition in error and case-made attached.

Defendant's assignments of error are presented under two propositions: First, error of the court in admitting evidence of a custom in the handling of pauper cases; second, that under the pleadings and evidence the court erred in rendering judgment against the defendant herein for care of paupers by the plaintiff, where the same was not authorized by resolution of the board of county commissioners while in session. The first cause of action is a claim of $584 for medical care and attention given to one Henry Trup. The second cause of action is a claim for $98 for medical care and attention given to one Willis Beaver. The third cause of action is a claim for $140 for medical care and surgical attention given to one A. L. Harbin. The fourth cause of action is a claim for $104 for medical care and attention given to one Eddie Ross. Briefly stated, the record discloses that for a long period of time there

had been an understanding that when these county patients were taken to the plaintiff hospital, the county would pay the actual expenses. but the physician or surgeon would receive no compensation for his services, and the cases involved in this action were handled in this manner.

At the conclusion of all the evidence the court found that each of the persons was a poor person, and that it was the duty and obligation of the overseers of the poor to care for such persons and provide medical and surgical treatment; that the expenses incurred were reasonable, just, and necessary, and that the several claims set out in plaintiff's petition are legal and proper claims against the defendant, and should have been paid at the time they were presented, and that judgment should be entered for the amount of the four claims in the sum of $926, with interest at the rate of 6 per cent. from the 2nd day of October, 1922.

It is contended by defendant that the court improperly admitted evidence of the custom in handling pauper cases, and it is pointed out that an objection to the question asked of the plaintiff, which was as follows: "How have these cases been handled—these county poor cases that you have to handle?" was overruled by the court. It being admitted that the county commissioners kept no record and took no action with reference to taking care of patients without financial means, it was not incompetent to permit the method by which the commissioners transacted business in emergency cases of the kind here involved to be shown.

The second proposition discussed by defendant in its brief is to the effect that the judgment is contrary to law. The facts as developed by the evidence show conclusively that each of the persons for whom the expense was incurred by the plaintiff was a poor person living in Garfield county; that two of these persons were sent to the hospital by agents of the county, to wit, by the county physician and the sheriff of the county after consulting one of the overseers of the poor; and that the other two cases were of such a nature that the overseers of the poor could not be consulted prior to giving them emergency relief, but that they were consulted immediately afterward and were fully aware of the situation.

The theory of counsel for the defendant is stated in his brief as follows:

"The county is no more liable for relief furnished to a poor person by one who has volunteered his services, even though an emer-

gency exists, than it would be in case he had built a bridge and presented his claim to the board of county commissioners and demanded payment for his services without having a previous contract, or without any authority previously given by the board of county commissioners acting as a board."

We think there is a clear distinction in the degree of discretion which the county commissioners may exercise in determining whether a bridge shall be constructed, and the degree of discretion which the county commissioners, acting as, overseers of the poor, may exercise in determining whether relief and care shall be given to the poor.

Many decisions of this court have announced the rule to the effect that, under the law, the board of county commissioners of the counties of this state can only contract to bind the county while they are sitting as a board, and that an agreement with one of the members in the absence of the others does not bind the county. Board of County Commissioners v. Seawell, 3 Okla. 281, 41 Pac. 592; Butler v. Board of County Commissioners, 57 Okla. 748; 157 Pac. 912; Nolan v. Board of County Commissioners, 51 Okla. 320, 152 Pac. 63; Board of County Commissioners v. Tulsa Camera Record Co., 103 Okla. 35, 228 Pac. 1103.

The above cases are cited by defendant in its brief in support of the proposition that under the evidence the plaintiff was clearly not entitled to recover its expenses for the care and treatment of the four persons who were without financial means to pay for the same, because the county commissioners had not, as a board, contracted with the plaintiff for that purpose. The rule announced in the cases relied upon does not apply, we think, to the facts in the instant case. The cases cited involved the question of contractual relations, where the county commissioners may exercise judgment and discretion in carrying out the ordinary business of the county; but the county commissioners have duties to perform other than those of a contractual nature—duties that are mandatory in their character. The county commissioners are, by statute, made overseers of the poor (section 8211, C. S. 1921). While exercising such duties the statute imposes upon them a positive obligation to see that the poor are properly relieved and taken care of in the manner required by law (section 8212, C. S. 1921). And the statute provides a fund to be expended for the support of the poor and insane (section 9698, C. S. 1921).

It will be observed that the statutes dealing with the duties of the overseers of the poor are distinct from the duties imposed upon the board of county commissioners in carrying on the ordinary business of the county, and do not contemplate that the county commissioners, in cases of emergency falling under their supervision as overseers of the poor, must necessarily, as a board of county commissioners, at some regular meeting of the board, contract with or authorize a physician to act in such emergency cases before the county would be liable for medical services rendered to persons without financial means. It is true that in many, if not most, instances, in discharging their duties as overseers of the poor, contract may be made with reference to furnishing of needed supplies, and for the employment of physicians who attend persons without financial means.

In Mahr v. Board of County Commissioners, 26 Okla. 628, 110 Pac. 751, it is held in the syllabus that:

"One member of a board of county commissioners cannot bind the county to pay for the services of a physician in attending upon the poor, without first having been authorized thereto by a majority of said board whilst in session."

This case is particularly pointed out by counsel for defendant in their brief, as controlling the instant case. The contention cannot be sustained. The Mahr Case, supra, involved the question of whether a physician, who claimed to have performed medical services for the poor at the instance of one of the county commissioners, could recover for his services, and the court held that this was not sufficient to constitute a binding contract with the county. It is evident that in that case the physician was relying upon a contract with one of the county commissioners for services to be performed thereafter. There is a marked distinction between a case where the physician bases his action upon a verbal contract with one of a board of county commissioners, for medical services to be performed in the future, as in the Mahr Case, and an action by a physician based upon an unliquidated claim for emergency medical and surgical services rendered a poor person on a quantum meruit basis, such as the case under consideration.

The record in the instant case clearly discloses the facts and circumstances under which the plaintiff herein treated and cared for the persons who were treated at its hospital, for which services the claims in question were made. The plaintiff did not volunteer its services. In one of the instances it was called to a certain place in the city of Enid about 2 o'clock in the morning. The

patient had been shot, was lying on the floor unconscious, and was bleeding profusely. There was an ambulance there, and the police officers picked the patient up and took him to the plaintiff hospital. The patient had no property nor money, but was an absolute pauper and his condition admitted of no delay if his life was to be saved.

One of the other patients was sent to the plaintiff hospital under the following circumstances: The patient was confined in the county jail in charge of the sheriff. He was insane and was ill from a gunshot wound he had received prior to the time he was placed in jail. The county physician had been taking care of him and he (the county physician) reported that this particular patient would die unless operated on at once. It appears the sheriff undertook to get in touch with some of the county commissioners, and saw one of them, and informed him, he states, that he had sent this patient to the plaintiff hospital. The man had no money nor property. The plaintiff physician testified as follows:

"At the time I examined him he had traumatic pneumonia with a gunshot wound. We operated on him and put him under the care of day and night nurse on account of his mental condition. He was there about a month, when he was discharged, cured of the pneumonia and the rib healed, and his mental condition seemed all right."

The facts as developed by the evidence show conclusively that each of the persons, for whom the expenses were incurred by the plaintiff, was a poor person in Garfield county, and that two of them were sent to the hospital by agents of the county, to wit, by the county physician and sheriff of the county, after consulting with one of the overseers of the poor, and that the other two cases were of such nature that the overseers of the poor could not be consulted prior to giving them relief, but they were consulted immediately afterward.

Nothing said herein is intended to question the general rule announced repeatedly in the decisions of this court, to the effect that a board of county commissioners can only contract to bind the county while they are sitting as a board, and that an agreement with one of the members of the board of county commissioners in the absence of the other does not bind the county (Board of County Commissioners v. Seawell, supra); and that one who demands payment of a claim against the county must show some statute authorizing it, or that it arose from some contract, express or implied, which finds authority in the law (Board of County

Commissioners v. Tulsa Camera Record Co., supra); but it is intended to hold that, it being made by statute the positive duty of the overseers of the poor of the counties of this state to provide medical treatment to persons residing in their counties who are without financial means, when it appears without dispute that such a person is suffering from an injury or disease that requires prompt treatment in order to save the life of such person, and the county commissioners cannot be convened within a reasonable time, a physician to whom such person is sent for treatment by the county physician or sheriff may present his claim for services to the county commissioners, and the fact that the physician submitting the claim had not been authorized by a majority of the board at a regular meeting thereof to render the services, will not deprive the board of the right to examine into the facts, and, if found to be a genuine emergency case, to allow the claim when the same is based upon reasonable charges, and the fund provided by law is sufficient to pay for the same.

It is not contended that the charges in this case are unreasonable. In fact, the record discloses that no charge was made for professional or surgical services, the claim being only for the actual expense incurred in caring for the four paupers who had been sent to the plaintiff hospital by the county physician or sheriff, and, as to some of them, with the consent of one of the county commissioners. Neither is it contended that these four persons were financially able to procure medical attention, or that their condition did not require immediate medical and surgical attention. The only defense is that the county commissioners, at some regular meeting, had not authorized the plaintiff physician to perform the service. This contention cannot be sustained. The claims involved in this case are based upon purely emergency attendance on the part of the plaintiff to sick and seriously injured paupers, and the dictates of humanity demanded that relief to these persons should be given then and there.

In Newcomer v. Jefferson Township, 181 Ind. 1, 103 N. E. 843, it is said:

"It is therefore the law's mandate in such an emergency as is here shown, which raises an implied liability to one who renders such necessary and prompt service as is here shown, for the reasonable value of the service."

In a note to the above case, in Ann. Cas. 1916D, 181, 186, it is said:

"The holding of the reported case (New-

comer v. Jefferson, supra) that where an emergency exists a physician may render aid to a poor person so as to make a municipality liable for his fee without the request or the consent of the person designated by statutes as the overseer of the poor finds support in a majority of the decisions which have passed on the point"

—citing cases from Illinois, Kansas, Minnesota, Mississippi, Pennsylvania, and Wyoming.

See 21 R. C. L. 712; Board of Commissioners v. Denebrink, 15 Wyo. 342, 89 Pac. 7; and Robbins v. Town of Homer, 95 Minn. 201, 103 N. W. 1023.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 22 C. J. p. 1006 §1281: 30 Cyc. p. 1157. (2) 30 Cyc. pp. 1068 (Anno.); 1071. (3) 30 Cyc. p. 1150; anno. 9 L. R. A. (N. S.) 1234; 39 L. R. A. (N. S.) 163; 21 R. C. L. p. 712.