[File Nos. 6083, 6084.]

MANDAN DEACONESS HOSPITAL, a Corporation, Respondent, v. COUNTY OF SIOUX, NORTH DAKOTA, a Public Corporation, Appellant.

and

BERNARD S. NICKERSON, Respondent, v. COUNTY OF SIOUX, NORTH DAKOTA, a Public Corporation, Appellant.

(248 N. W. 924.)

Opinion filed March 25, 1933. Rehearing denied June 24, 1933.

*Hyland & Foster* and *A. McG. Beede,* for appellant.

*Sullivan, Hanley & Sullivan,* for respondents.

BIRDZELL, J.   Two actions, one brought to recover for hospital services and one to recover for professional services of a physician rendered to a resident of Sioux county, were brought against the County of Sioux and by stipulation tried together.   A jury trial was waived and in each action findings of fact and conclusions of law were made favorable to the plaintiff.   From judgments for $651.95 and costs and $483.33 and costs, respectively, and from orders denying judgment notwithstanding or a new trial, the defendant has appealed.   The cases

were argued together in this court and both may be properly treated in one opinion. The record presents the following facts:

During the night of the 24th–25th of June, 1928, one Wendelin Vetter, an adult who resided in an unorganized township in Sioux county, was injured in an automobile accident. He suffered a basal fracture of the skull, a fracture of both bones of the left forearm, and a compound, comminuted fracture of the bones of the left leg between the knee and the ankle. As a result of his injuries he was rendered unconscious. The accident happened approximately eleven miles north of Fort Yates, the county seat of Sioux county. During the night Vetter was taken to Doctor Rice of Solen, in the same county, who was the health officer, but not the county physician of the county. (It seems there was no county physician in the county.) He was there examined superficially and the examination indicated the need of hospital facilities and the care and attendance of a good surgeon. Doctor Rice recommended that the injured man be taken where he could have such care. About four o'clock in the morning of June 25th, Vetter was taken to the plaintiff hospital for care. He was still unconscious and remained in that condition for a number of days thereafter. The hospital provided for his care, securing a special nurse between June 26th and July 14th, for which service it expended the sum of $95. The only compensation made for the service rendered to Vetter was $50, which was paid to the hospital by one who owed that sum or more to Vetter, and this $50 was applied on the charge for the special nurse. He remained in the hospital receiving hospital care and medical and surgical attention until November 10, 1928. During all of the time, and especially during the earlier weeks of the period, his condition was such that he could not have been properly cared for in any other place than a hospital. To have required him to leave the hospital would have endangered his life and would have enhanced the probability of his becoming permanently crippled. On or about the 2nd day of July, R. B. McDonald, a county commissioner and an overseer of the poor of Sioux county, was notified that Vetter was a patient in the hospital, was without means to provide for his care and that he was dangerously injured and helpless. The matter was also brought to the attention of the board of county commissioners of Sioux county but no action was taken.

No question was raised concerning the reasonable value of any of the service furnished to Vetter, nor concerning his inability to command or pay for the service given. The only contention in the lower court and the only question raised here is as to whether the county is liable in the circumstances stated.

It is argued that there is no common law liability and that the county is only liable to the extent it has been rendered so by statute. St. Luke's Hospital Asso. v. Grand Forks County, 8 N. D. 241, 77 N. W. 598; Hamlin County v. Clark County, 1 S. D. 131, 45 N. W. 329; Roane v. Hutchinson County, 40 S. D. 297, 167 N. W. 168.

This is a correct statement of the law, and the question before us, therefore, resolves simply to this: whether under our statutes a county is liable for medical and hospital services rendered to an indigent person in the absence of direction by officers charged with the duty of administering poor relief. This question, it would seem, is practically concluded in this jurisdiction by an early interpretation of the poor relief statutes in St. Luke's Hospital Asso. v. Grand Forks County, 8 N. D. 241, 77 N. W. 598, supra. In all essential particulars, at least in so far as concerns the question involved here, the present statute, article 1, chapter 38 of the Political Code of 1913, is substantially the same as article 1, chapter 22 of the Revised Codes of 1895, which was construed by this court in the case referred to. Concerning this statute, the court said (page 242 of the state report) that it provided "the persons to whom, the officers by whom, and the manner in which, the county extends its bounty to the poor. It does not include authority to those who are not therein charged with that duty, to determine who are paupers, and to furnish them succor at the expense of the county." The court differentiated our statutory provisions from provisions in some of the other states, notably Maine, where the statute provides that when public officers should refuse or neglect to do their duty any person may, after giving due notice, render assistance and that the county should be liable. Since our statutes remain substantially the same as they were in 1895, and since no amendment has been made which can be construed to impose an obligation on the county to support indigent persons, or to compensate for services rendered in emergency cases or under necessitous circumstances, as upon an implied contract, where the officers charged with administering poor relief

neglect their duty, there is no obligation which the courts can enforce. Courts cannot create public obligations in accord with their views of the dictates of humanity even in extreme cases. The function of providing for relief at the expense of the public is essentially a legislative function and it is the duty of the courts to give effect to the intention expressed in legislation. For a court to hold that there is a liability on the part of the county in the circumstances appearing in the instant case, would of necessity amount to an interposition of its judgment for the judgment of the officers upon whom the legislation has placed the duty of acting. It would be an act of judicial legislation.

Perhaps the strongest authority in support of the contentions of the respondent is that of Sheridan County v. Denebrink, 15 Wyo. 351, 89 Pac. 7, 9 L.R.A.(N.S.) 1234. In that case the plaintiff had rendered services as a physician and surgeon to a non-resident in an emergency. The statute provided expressly that when any non-resident or any other person not coming within the definition of a "pauper" should fall sick in any county not having money or property to pay his board, nurse and medical attendance, the county commissioners upon notice thereof should "provide such assistance as they may deem necessary, by contract or otherwise" and that they should "make such allowance for board, nursing, medical attendance and burial expenses as they may deem just and equitable." In construing this statute as applied to emergency cases, the court said (page 9 of 89 Pac., 15 Wyo. 351):

"The legislature evidently intended this class of cases should be attended to, yet it has failed to point out the methods of giving prompt assistance in an emergency case. In such case the object, purpose, and policy of the law is clear, and, although the statute is silent as to the method of giving speedy and needed relief, its object and purpose ought not for that reason to be defeated."

The court held that, since the board of county commissioners was not in session at the time, the case fell within the exception to the rule that request was necessary for contract liability, saying "It was both the moral and legal obligation of the board to furnish a physician for the injured man, and, upon its failure to do so, Doctor Denebrink and his assistant performed the services which the exigencies of the case required to save a human life, with the expectation of being reimbursed therefor. In such cases there is always a legal presumption of a

promise to pay, without any proof that such promise has been made or the services requested by the party sought to be charged."

Under the facts in the case at bar, unless a very liberal definition of emergency treatment be adopted, it would be difficult to say how much of the service was furnished to the patient in such circumstances as to create an obligation within the principle of the Denebrink Case. The plaintiff Nickerson testified that the patient did not become thoroughly tractable until the expiration of two weeks following the injury and that meanwhile he was given "ordinary retentive treatment so the fractures would not get any worse." On the other hand, this is the period during which the special nurse was employed and paid by the hospital. Meanwhile, the defendant county had been notified and had apparently declined to accept the burden. Clearly, as to the major portion of both the hospital and professional services, there was not such an emergency as was presented in the Denebrink Case where an immediate operation was required to save the life of the patient. But from the standpoint of a charitable institution organized for the relief of human suffering, as well as from the standpoint of the ethics of a profession devoted to the art of healing, it would seem that at no time following the acceptance of the patient in an extremely precarious condition would either have been wholly justified in abandoning the case on account of the failure of the county to make provision for his proper care. Yet under the statute, to hold the county liable for the entire care would clearly be to make some one other than the legally constituted authority, the overseers of the poor, the judge as to the necessity for relief in the particular case. This cannot be done if the statute is to be respected and followed.

Another authority relied upon by the respondent as establishing a liberal rule for recovery in emergency cases is Robbins v. Homer, 95 Minn. 201, 103 N. W. 1023. There the question came before the court on a demurrer to the complaint. The services were alleged to have been rendered in reducing a fracture of a hip joint. Concerning the emergency, the court said: "While the allegations of fact showing the emergency might have been more fully set forth, it still, upon a liberal construction of the challenged pleading, appears to have been a case where there was an urgent requirement for a physician's services, and the surgical treatment bestowed." The court construed the statute

imposing the duty upon townships to provide for the care of paupers and held it to create an obligation to relieve and held that where an emergency arises the law will imply a promise in the absence of a request. In concluding the opinion, however, the court said: ". . . it reasonably appearing that an emergency arose where it was impossible for them to do so (provide a physician), we hold that the conclusion follows that there was a legal duty on the part of the town to pay such reasonable claim for the services of plaintiff as he may be able to establish, *at least until the board of supervisors can be notified and appropriately act in the premises.*" (Italics are ours.) See also Garfield County v. Enid Spring Sanitarium & Hospital, 116 Okla. 249, 244 Pac. 426; 48 C. J. 540.

We are of the opinion that the weight of authority supports the view heretofore adopted in this jurisdiction. See 48 C. J. 537–540; Cerro Gordo County v. Boone County, 152 Iowa, 692, 133 N. W. 132, Ann. Cas. 1913C, 79, 39 L.R.A.(N.S.) 161, and note.

Under this view there is no legal liability such as will support an action at law. We come to this conclusion reluctantly in the case at bar, for the reason that the circumstances presented on the record show not only that much needed services were rendered to one who was in such unfortunate circumstances he could not in all probability have obtained, on the strength of his own credit, the care required for the restoration of his health, but that the statute contemplates such reasonable administration of the poor laws in such cases as will result in a county assuming the necessary obligation under the supervision of its duly constituted authorities. The claims are apparently just and should have been or should now be paid.

However, for the reasons stated, the judgments must be reversed and the actions dismissed. It is so ordered.

CHRISTIANSON, BURR and BURKE, JJ., and GRIMSON, Dist. J., concur.

NUESSLE, Ch. J., did not participate; Hon. G. GRIMSON, Judge of the Second Judicial District, sitting in his stead.