TRINITY HOSPITAL ASSOCIATION, a
corporation, Plaintiff and
Respondent,

v.

CITY OF MINOT, a municipal corporation,
organized and existing under the laws of
North Dakota, Defendant and Appellant.

Dr. J. L. DEVINE, Sr., Dr. J. L. Devine, Jr.,
Dr. W. B. Huntley, Plaintiffs and
Respondents,

v.

The CITY OF MINOT, Defendant and
Appellant.

Nos. 7585, 7586.

Supreme Court of North Dakota.

May 8, 1956.

Bosard & McCutcheon and Eugene E. Coyne, Minot, for defendant and appellant City of Minot.

Ilvedson, Pringle & Herigstad, Minot, for plaintiff and respondent Trinity Hospital Ass'n.

McGee & Van Sickle, Minot, for plaintiffs Dr. J. L. Devine, Sr., Dr. J. L. Devine, Jr., and Dr. W. B. Huntley, copartners.

MORRIS, Judge.

This opinion embraces two actions brought against the City of Minot arising out of a single set of facts and circumstances. In one action the Trinity Hospital Association seeks to recover for services rendered to LeRoy Githens who was fatally wounded by a police officer of the city on March 11, 1951. Doctors J. L. Devine, Sr., J. L. Devine, Jr., and W. B. Huntley, as partners, seek to recover for

professional services as physicians rendered to Githens during his period of hospitalization. The actions were tried together upon stipulated facts to a court without a jury. The defendant appeals from judgments in favor of the plaintiffs.

Githens was shot and wounded during the early morning hours of March 11, 1951, by a police officer of the City of Minot while he was fleeing from the scene of a burglary he had perpetrated. The officer notified police headquarters of the shooting and asked for an ambulance. An ambulance was sent immediately and the wounded man was taken to the Trinity Hospital. Dr. Devine was also called to be on hand when the ambulance arrived at the hospital. Githens lived for five days during which he was furnished hospital service and medical attention by the plaintiffs.

An inquest was held on March 16, 1951, and the corner's jury returned a verdict of justifiable homicide. It is not contended that the shooting was unlawful or unjustified. It is stipulated that the amounts claimed by the plaintiffs are the reasonable values of the services rendered. Bills for these services were duly presented to the city council and disallowed.

Githens left no estate. The welfare board of Ward County has refused to assume responsibility for the services rendered to the deceased. No point is made of the fact that the Trinity Hospital Association is a charitable corporation. The only question presented by this record is whether under the circumstances the City of Minot is liable to the plaintiffs for the hospital and professional services. The trial court permitted recovery on the theory of quantum meruit.

█ In this state a city is purely a creature of statute. State ex rel. Shaw v. Frazier, 39 N.D. 430, 167 N.W. 510. Its rights, powers, and duties are fixed by the legislature. Village of North Fargo v. Fargo, 49 N.D. 597, 192 N.W. 977. A city is therefore an agency of the state and has only the powers expressly conferred upon it by the legislature and such powers

as may be necessarily implied from those expressly granted. State ex rel. Dreyer v. Brekke, 75 N.D. 468, 28 N.W.2d 598; City of Fargo v. Sathre, 76 N.D. 341, 36 N.W.2d 39; James v. Young, 77 N.D. 451, 43 N.W.2d 692, 20 A.L.R.2d 1086; Harding v. City of Dickinson, 76 N.D. 71, 33 N.W.2d 626; Fradet v. City of Southwest Fargo, 79 N.D. 799, 59 N.W.2d 871; Megarry Brothers v. City of St. Thomas, N.D., 66 N.W.2d 704.

Section 40–0501, NDRC 1953 Supp. gives to all municipalities power to enact or adopt ordinances, resolutions, and regulations not repugnant to the constitution and laws of the state as may be proper and necessary to carry into effect the powers granted to the municipality or as the general welfare of the municipality may require. Subsection 41 of Section 40–0501, NDRC 1943 gives municipalities power

"To establish, maintain, and regulate a jail and, with the consent of the board of county commissioners, to use the county jail for the confinement of persons charged with or convicted of the violation of any ordinance; * *."

Section 40–0502, NDRC 1943 gives cities certain powers "in addition to the powers possessed by all municipalities" and among these is listed the power

"To establish, maintain, and regulate a city jail, house of correction, and workhouse for the confinement and reformation of disorderly persons convicted of violating any city ordinance, and to appoint necessary jailers and keepers; * * *." Subd. 5.

█ It should here be noted that these sections give to the city power to establish and maintain a jail but do not place upon the city the duty to do so. The power also appears to be restricted to providing a place for the confinement "of persons charged with or convicted of the violation of any ordinance." The record in this case is silent as to whether or not the City of Minot has exercised its power to provide such a place of confinement.

We are unable to find a statute and none has been pointed out to us which places upon the city the duty to provide at the city's expense medical services or hospitalization for persons confined in its jail or in custody of its police. It should be noted in contrast that the legislature has provided for a jail in every county which is under the authority of a board of county commissioners and that the district judges are required to prescribe rules for the regulation and government of the jails in the several counties within their respective districts. Among the subjects to be covered by those rules is "The employment of medical and surgical aid when necessary." Section 12–4404, NDRC 1943.

■ A policeman of a city is also a peace officer, Section 29–0510, NDRC 1943, and as such he is not confined to arrests for violations of city ordinances but has the general powers of a peace officer of the state. He may make an arrest for a public offense committed or attempted in his presence or when he has reasonable cause to believe that the person arrested has committed a felony. The arrest may be made at night. Section 29–0616, NDRC 1943. When such an arrest is made Section 29–0625, NDRC 1943 requires that the person arrested be taken without unnecessary delay before a magistrate and a complaint made of the offense charged.

The circumstances of this case are such that LeRoy Githens could not be taken before a magistrate and the record is silent as to whether a formal arrest was ever made, complaint filed, or warrant issued. It does not appear that either the governing bodies of the City of Minot or of Ward County were ever notified before Githens' death that he was hospitalized and was being medically treated. The plaintiffs concede that no express contract was made with the City of Minot for his care and treatment. The sole contention is that under the facts here presented the law will imply a contract on the part of the city to pay the reasonable value of the services rendered.

This court has on several occasions considered questions involving the liability of cities or counties upon implied contracts for goods furnished or services rendered. In Bosard v. City of Grand Forks, 13 N.D. 587, 102 N.W. 164, suit was brought to recover upon an implied contract for the reasonable value of professional services rendered by an attorney other than the city attorney in advising the mayor and aldermen, where his employment had not been authorized by the city council although the mayor had requested that the services be performed. There was no dispute as to the fact that the plaintiff did the work which he claimed and that his charge was reasonable. The only question was the city's liability. The court considered the effect of Section 2143, Revised Codes 1899, the pertinent provisions of which now constitute Section 40–1103, NDRC 1943, which provides:

"The yeas and nays shall be taken and entered on the journal of the governing body's proceedings upon the passage of all ordinances and upon all propositions creating any liability against the city or providing for the expenditure or appropriation of money, and in all other cases at the request of any member."

In denying the plaintiff's right to recover the court said:

"The statute governing cities provides that no liability can be created against a city, or any expenditure or appropriation of its funds can be made, unless the proposition to do so is adopted by a yea and nay vote, which vote must be entered on the journal of the proceedings. Rev.Codes 1899, § 2143. There are doubtless cases in which a city may be impliedly liable notwithstanding the failure of its officers to observe the statutory requirements as to the method and form of contracting in its behalf; but this is not such a case. The law of implied municipal liability is clearly stated by Chief Justice Field in the case of Ar-

genti v. San Francisco, 16 Cal. 255, as follows: 'The doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of contract, imposes the obligation upon the city to do justice with respect to the same. * * * In reference to money or other property it is not difficult to determine in any particular case whether a liability with respect to the same has attached to the city. The money must have gone into her treasury, or been appropriated by her; and when it is property or other than money it must have been used by her or be under her control. But with reference to services rendered the case is different. Their acceptance must be evidenced by ordinance to that effect. If not originally authorized, no liability can attach upon any ground of implied contract. The acceptance, upon which alone the obligation to pay could arise, would be wanting. As a general rule, undoubtedly, the corporation is only liable upon express contracts, authorized by ordinance. The exceptions relate to liabilities from the use of money or other property which does not belong to her, or to liabilities springing from the neglect of duties imposed by the charter, from which injuries to parties are produced. There are limitations even to these exceptions in many instances, as where property or money is received in disregard of positive prohibitions.' In the foregoing statement of the law the learned jurist evidently used the term 'ordinance' in the broad sense of formal corporate action, and did not intend to convey the idea that in all cases an ordinance in the strict sense was necessary to create a liability. The same question is further discussed by the same judge in Zottman v. San Francisco, 20 Cal. 96, 81 Am.Dec. 96, where the circumstances were analogous to the case at bar. See, also, 1 Dillon on Municipal

Corporations (4th Ed.) § 459 et seq. However valuable the services of the respondent may have been to the city in this instance, to hold the city liable for them would be to override the law, and to destroy one of the strongest safeguards cast about the expenditure of public funds. It is doubtless true that the professional labor and advice of the plaintiff enabled the mayor and aldermen to frame and enact an ordinance more advantageous to the city than could have been framed without his assistance. In this sense the city has been benefited. But if the city is to be held liable for all legal advice sought and received by its officers on the theory that it has, by reason of such advice, received the benefit of wiser and more intelligent official action, the demands upon the municipal treasury would exceed all bounds."

We have since followed what was said in that decision with respect to actions on implied contract for the recovery of the reasonable value of property furnished to municipal corporations or political subdivisions of the state.

In Northwestern Sheet & Iron Works v. Sioux County, 76 N.D. 451, 36 N.W.2d 605, 610, the plaintiff sought to recover the value of road culverts irregularly purchased by the governing board but retained and used by the county. After reviewing a number of our former decisions we came to the conclusion that:

"A public corporation may not escape liability for the reasonable value of goods obtained and retained by it through transactions coming within the general powers of the corporation and the contracting corporate board, which are procedurally defective without paying the reasonable value thereof when equity and good conscience require payment."

In Megarry Brothers v. City of St. Thomas, N.D., 66 N.W.2d 704, we denied the right of a contractor to recover from the city upon implied contract for an in-

creased amount of materials and labor resulting from changes made in street paving plans during the progress of the work. We held that a statute prohibiting a municipality from assuming or incurring general liability on improvement contracts was applicable to implied as well as express contracts and that what a city is forbidden to do by express contract it cannot do indirectly by implied contract.

Rolette State Bank v. Rolette County, 56 N.D. 571, 218 N.W. 637, 640, involves the liability of a county for the payment of services rendered in repairing roads. A member of the board of county commissioners entered into an arrangement with his two sons to do work on county roads. The work was not authorized by action of the board of county commissioners. The sons assigned their claim to the plaintiff and after it was rejected by the board of county commissioners suit was brought against the county for the reasonable value of the services rendered. In reversing a judgment of the trial court in favor of the plaintiff this court said:

"Such obligation arises only when the services have been performed in such circumstances, and where there has been such conduct on the part of those whose actions may bind the county as to impose upon it the legal obligation to compensate therefor. 2 Dillon Mun.Corp. (5th Ed.) pp. 1186, 1187; Bosard v. City of Grand Forks, 13 N.D. 587, 102 N.W. 164.

"Ordinarily, there is no quasi contractual obligation to pay for services, unless the party sought to be charged has accepted the services. And, if the services are of such nature that he has no choice but to accept them, there is no acceptance and no liability."

█ The plaintiffs would avoid the impact of these decisions on two grounds. It is argued that when Githens was shot he was reduced to custody by a police officer and therefore became a prisoner of the city for whom it was the duty of the city to provide the necessities of life including medical attention and that in the absence of a statute which specifically negatives the liability of a city for medical services or hospital care furnished to a prisoner of a city recovery should be had for such services and care on implied contract. Under the meager record presented here it is difficult to determine whether the policeman acted as an officer of the city or whether he acted as a peace officer under the provisions of Section 29–0510, NDRC 1943 and as such apprehended a violator of the state burglary statutes. However, for the purposes of our present discussion we will assume that the policeman took Githens into custody as an officer of the city. A policeman has no authority to make a binding contract for or create any contractual liability against the city. Those powers are vested in the city council. See Section 40–1103, NDRC 1943 heretofore quoted.

Plaintiffs cite Miller v. Dickinson County, 68 Iowa 102, 26 N.W. 31, in which it was held that where the circumstances are such that a prisoner cannot be confined in jail the county is liable for necessaries furnished him at the place where he is in fact confined and that the county must pay for the board and care of a prisoner who was shot and dangerously wounded while being arrested. But in that case there was a statute requiring the sheriff to "furnish necessary bedding, clothing, fuel, and medical aid for all prisoners under his charge, * * *."

Plaintiffs also cite Spicer v. Williamson, 191 N.C. 487, 132 S.E. 291, 44 A.L.R. 1280, in which it was held that the statutory duty of the county commissioners to provide necessary medical attention to prisoners confined in the county jail extends to a prisoner in lawful custody of the sheriff who because of the physical condition of the prisoner was unable to place him in jail. Here again liability was predicated upon the statutory duty to provide necessary medical attention to a prisoner.

█ We have reached the conclusion that the police officers of a city have no authority to create a liability against a city

upon a contract express or implied for medical services or hospital care furnished a person in their custody and one furnishing such services or care may not recover from the city therefor in the absence of an agreement, acceptance, or ratification on the part of the governing body.

The services rendered in this case had their inception in an emergency. How long that emergency continued we need not determine. It is apparent, however, that no attempt was made to secure authorization for or ratification of the services rendered by the plaintiffs throughout the five days that Githens lived. The plaintiffs argue that the services were rendered in an emergency which impels the court to find a liberal construction of the law that will render the city liable. There is a dearth of authority to support this contention but the case that most nearly favors it and the only one which seems to give major consideration to such an emergency is the decision of the appellate court of Indiana in Lamar v. Board of Commissioners of Pike County, 4 Ind.App. 191, 30 N.E. 912, 913. In that case the county was held liable for medical services rendered by a physician summoned by the jailer to attend a prisoner in an extreme emergency not admitting of the four hours' delay necessary to secure the attendance of the secretary of the board of health who was the statutory physician for prisoners and who resided twelve miles from the jail. Even in that case the court relied, in part at least, upon the statutory duties of the sheriff, saying:

> "Among the enumerated duties of the sheriff by section 5868, Rev.St. 1881, are 'that he shall take care of the jail and the prisoners therein,' and by section 6118, Rev.St.1881, it is provided that 'the sheriff of the county, by himself, or deputy, shall be responsible for the manner in which the same is kept, * * * and shall provide proper meat, drink, and fuel for the prisoners.' In the case before us it was the duty of Smith, the jailer in charge of the prisoner, and acting for the sheriff, to summon a competent physician under the existing emergency, to treat the prisoner, and thereby save his life, if such could be done."

In an annotation on the liability of the public for services of a physician or surgeon rendered prisoners, 50 L.R.A.,N.S., 1223, a number of cases are summarized, including Lamar v. Board of Commissioners of Pike County, supra. The annotator reached the conclusion that

> "As a general rule it seems that, in the absence of some express provision of the law, the public is not liable to a physician or surgeon for services rendered prisoners in charge for criminal offenses, even though such prisoners are insolvent and unable to pay for such services themselves."

A similar statement appears in 41 Am.Jur., Prisons and Prisoners, Section 24. An annotation on the same subject is found in 44 A.L.R. 1285.

An emergency may give rise to a liberal construction and application of statutes fixing municipal liability but an emergency will not create a liability for services against a city upon contract express or implied where no statutory authority therefor exists.

In Pyrene Manufacturing Company v. City of Atlanta, 27 Ga.App. 568, 110 S.E. 408, the plaintiff sued the city for fire extinguishers furnished to citizens at the request of the fire chief during a large conflagration that constituted a great emergency. The suit was based on both express and implied contract. The court held that the fire chief had no authority to purchase the extinguishers and that the existence of a great emergency did not change the situation.

In Mandan Deaconess Hospital v. Sioux County, 63 N.D. 538, 248 N.W. 924, 925, this court considered actions brought by a physician and a hospital to recover the reasonable value of emergency services rendered to an indigent of Sioux County

who was injured in an automobile accident and was brought to the hospital in an unconscious condition that continued for a number of days. The court pointed out that there was no statute that could be construed to impose an obligation on the county to compensate for services rendered to indigents in emergency cases where the services had not been approved by the officers charged with administering poor relief and held:

"In the absence of legislation imposing an obligation upon a county for the reasonable value of services rendered to a poor person in an emergency, there is no basis upon which the courts can construct a liability."

 In this case there being no statute authorizing the police to contract for or create a liability on behalf of the City of Minot for the services rendered to LeRoy Githens, the primary liability and obligation to pay for those services rested on Githens or his estate. 58 Am.Jur., Work and Labor, Section 5; 41 Am.Jur., Physicians and Surgeons, Section 142; 70 C.J.S., Physicians and Surgeons, § 68a. We have no statute which imposes upon the city either a primary or a secondary obligation to pay for the services rendered by the plaintiffs and the city through its governing body has assumed none. The plaintiffs in this case are in the same position as were the hospital and the physician involved in Mandan Deaconess Hospital v. Sioux County, supra. They cannot recover upon any theory of quantum meruit or implied contract. There is no basis upon which the court can construct a liability.

The judgments appealed from are reversed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.