# NOLAN v. BOARD OF COM'RS OF GRANT COUNTY.

No. 5122.    Opinion Filed September 21, 1915.

(152 Pac. 63.)

1. **CONTRACTS — Construction—Railroads—Counties—"They Can Get."** (a) A railroad bridge was taken out by high water. The railroad company agreed with the county authorities that the county could have the piling that was carried down the stream from the bridge in consideration of the county having the caps of the bridge brought back to the bridge, which the county authorities did. **Held,** the county thereby became the owner of the piling and entitled to its possession wherever found.

(b) The railroad company agreed with the county authorities that the county could have such piling as "they could get." **Held** not to mean that the county should have only such pilings as they were able to take possession of before some one else did, but to mean all the pilings they could get without too great cost.

2. **COUNTIES—Contracts—Binding—Effect.** A county commissioner has no authority to make a binding contract for the county, for all acts of the board must be done in regular session, but a contract made by an individual member of the board, when ratified by the other members, becomes binding upon both parties to the contract.

3. **LOGS AND LOGGING—Floating Timbers—Ownership—Transfer.** Where timbers have lodged against a bridge during high water and thereby endanger the bridge, the owners of the bridge would have no right to give the timbers to a third party upon condition that he retrieve the same where the owner of the timbers proceeds with dispatch to retrieve the timbers.

4. **SAME.** To transfer ownership to timbers carried away by high waters, it is not necessary to deliver manual possession, but title to the property can be transferred without an actual delivery, and the purchaser can reduce the property to possession afterwards.

(Syllabus by Mathews, C.)

*Error from District Court, Grant County;*

*W. M. Bowles, Judge.*

Replevin by the Board of Commissioners of Grant County against Mike Nolan. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. W. Stephenson* and *Sam P. Ridings,* for plaintiff in error.

*Emery H. Breeden,* for defendant in error.

Opinion by MATHEWS, C. This is an action in replevin instituted by the board of county commissioners of Grant county against Mike Nolan for the possession of certain bridge timbers or pilings. It appears that in August, 1911, the high waters in Salt Fork river, owing to heavy rains, carried out the Rock Island Railway bridge near Pond Creek and two bridges belonging to the county lower down on the same stream and a large amount of the timbers in these bridges lodged against the Frisco Railway bridge, doing much damage to the bridge and forcing it out of line, so that trains could not be run over it until repaired.

The evidence shows that the bridges were washed out on Sunday, August 6, 1911, and that on the next day the county commissioners applied to F. J. Gentry, a lumber dealer at Pond Creek, for material to replace the county bridges. It appears that Gentry did not have on hand the pilings necessary, and on the evening of that same day the said F. J. Gentry made arrangements with the superintendent of the Rock Island Railway, who happened to be in Pond Creek, that the county would deliver at the Rock Island bridge the caps that were washed away from this bridge, and as compensation therefor the county was to have the pilings washed down the river from the bridge. Mr. Gentry at once communicated with E. V. Hamilton, one of the county commissioners, who

was at Medford, by phone, informing him of the arrangement with the superintendent. The county immediately employed parties who proceeded just as soon as the condition of the river would permit, which was on the following Tuesday evening or Wednesday morning, to get out the timbers lodged against the Frisco bridge, and also to have the caps back to the Rock Island bridge, as agreed.

Soon after the timbers lodged against the Frisco bridge the defendant, Nolan, made an agreement with the Frisco authorities that he was to have the timbers lodged against the Frisco bridge if he would take the same out, and about the same time that the county force began work at the bridge in getting out the timbers the defendant, Nolan, also started upon the same work. Mr. Hinton, who had in charge the force working for the county at the bridge, testified that he notified all that were working at the bridge getting out the timbers that the county commissioners had a contract for the timbers, but the defendant testified that he did not hear him, although he says it was rumored that the timbers would be taken away from any one who got them out.

Plaintiff having replevied the timbers, the defendant gave a redelivery bond and retained possession of the same. The case was tried to a jury, which found that the county, plaintiff, was entitled to the possession of the timbers, and that the value of the same was $125, and the jury further found that the defendant had performed labor in retrieving the timbers, and that his services were worth $75, and a judgment was accordingly entered decreeing the county to be entitled to the possession of the timbers or a judgment in lieu thereof in the sum of $125, and the defendant was given a judgment against the

county for $75.   Defendant filed a motion for a new
trial, which was overruled, and has appealed to this
court.

The plaintiff contends that the county owned the
timbers through the contract with the Rock Island super-
intendent, and that this ownership attached to the same
even while the timbers were in the water lodged against
the Frisco bridge.   The defendant contends:   (1) That
the county had no right to the timbers under their con-
tract with the Rock Island except such as the county re-
trieved from the river; (2) that Mr. Hamilton, acting
individually, as county commissioner, could not make a
binding contract for the county; (3) that the timbers
lodged against the Frisco bridge were a nuisance under
section 4250, Rev. Laws 1910, and that the Frisco Rail-
way had the right to take extreme steps to get the same
removed; (4) that, under the arrangement with the Rock
Island, no possession of the timbers was transferred to
the plaintiff, and the defendant had no knowledge of the
arrangement; (5) that, as the jury found that defendant
performed services in rescuing the timbers of the value
of $57, under section 3852, Rev. Laws 1910, the plaintiff
was not entitled to the possession of the timbers until the
same was paid.

The defendant, as plaintiff in error, has assigned these
errors as enumerated above, and we will take the same up
in the order named.

1.   Under the first assignment of error the defendant
makes the following statement:

"It is apparent from the testimony   *   *   *   that
it was not intended by the Rock Island officials nor any
other person that the county should have any title or

interest in these timbers except such as they were able and did retrieve from the river."

Mr. Gentry testified that the Rock Island superintendent, in reply to his suggestion that he let the county have the piling that had been carried away by the river from the Rock Island bridge, said:

"You make arrangements with the county commissioners, and if they w.ll deliver me up what caps we can find, * * * up here at the track, they can have the pilings and the stuff that they can get."

It is true that the superintendent said. "They can have the pilings * * * that they can get," but such a statement cannot be construed to mean that it was intended that the county should have the ownership in such pilings only as they were able to retrieve or take actual possession of before some one else did so. It cannot be conceived that the county would enter into such a contract, which, if the contention of the defendant be true, would closely resemble the race made into the Strip in September, 1893, when the first to reach a claim became entitled to its possession. The more reasonable construction of the agreement would be that the county was to have such piling as it could procure without too great cost. The county paid a consideration for the pilings in controversy that was satisfactory to the former owner of the same, and thereby became entitled to the possession thereof wherever the piling happened to be. It would be preposterous to say, merely because some one else was first upon the ground and retrieved the pilings, that thereby the county was divested of ownership. The Frisco Railway Company had no ownership in the pilings merely because the same lodged against its bridge, and

could not, from that fact alone, invest any one else with title to the same.

2. The defendant states his next proposition as follows:

"It appears that all that was done in making this arrangement was that the witness Gentry made the contract with the Rock Island through Mr. Halleck and reported the same to Mr. Hamilton, one of the board of county commissioners, and they went ahead to take such of the timbers as they could. This appears from the evidence here in set out. The individual members of the board, and much less one member of the board, could make no binding contract so as to procure title to this contract, but all acts of the board must be done in regular session while sitting as a board.

"In case of *Board of County Commissioners v. Seawell*, 3 Okla. 281 [41 Pac. 592], the syllabus reads as follows: 'Under the law a board of county commissioners can only contract to bind the county while they are sitting as a board; and an agreement with one of the members, in the absence of the others, does not bind the county.' If the county was not bound by this arrangement no one else was."

The defendant states the law correctly as to an executory contract, and it is true that as long as the agreement remained in that condition it would be binding upon neither party, although it might well be doubted that a third party could take advantage of the situation even while it was in the incipient, executory stage only. Neither Mr. Gentry nor Mr. Hamilton, one of the commissioners, had any right to bind the county in such a contract, but the county, by its board of commissioners, instead of rejecting the proposition, ratified the same, and promptly sent out a force of men to rescue the timbers and delivered the caps to the Rock Island as agreed, paid the

force for their service, and has, through the board, fully satisfied the contract in every way. The Rock Island Railway accepted the caps delivered according to contract, which was the full agreed consideration, and thereby also became bound by the contract, and the ownership and control of the pilings passed from the said Rock Island Railway.

3. Defendant next urges that it was necessary for the Frisco Railway Company to take extreme steps to get the timbers away from where the same had lodged against the Frisco birdge, owing to the fact that the Frisco bridge was endangered by the lodgment of the debris from above, and in so doing they had the right to give the same to the defendant upon condition that he would remove the same. This contention might be true if the county had delayed action in removing the timbers, but the evidence in the case shows that it proceeded with unusual diligence and dispatch, and had a full force of men at the bridge who commenced to retrieve the timbers the moment the condition of the river permitted it. If the county had allowed the timbers to remain lodged against the bridge so as to endanger the bridge itself for any considerable moment after the condition of the river became such that the timbers could be gotten out, then the Frisco Railway Company might have had the right to agree with the defendant that he could have the timbers upon condition that he remove the same from the river. There is no showing in the case, however, that the defendant removed the timbers any quicker than the plaintiff would have. The plaintiff was early on the scene with a large force ready to do so, and if the bridge could have been better protected by having the timbers removed by the defendant than by the plaintiff, then the

burden was upon the defendant to show that fact, because the ownership of the timbers was in the plaintiff, and if defendant seeks to divest it of that title, he must show such a state of facts that will legally justify it.

4. As to the fourth contention, that the Rock Island Railway Company did not transfer any possession to plaintiff, the company was still in constructive possession of the timbers after they were washed away, and to transfer ownership it is not necessary to deliver manual possession, but title to the property could be given without an actual delivery, and the purchaser could reduce the property to possession afterwards. We do not deem it necessary for plaintiff to show that defendant had knowledge of the arrangement between plaintiff and the Rock Island Railway Company. The fact is the timbers did not belong to the Frisco Railway Company, and the said railway company, under the conditions, had no right to bargain the same to defendant. Defendant contends that he did not have any knowledge of the arrangement between the plaintiff and the Rock Island Railway. If that was a material issue in the case, it would not avail the defendant here, for the reason that a Mr. Hinton testified that he told defendant that the county commissioners had a contract for the timbers, and that he supposed defendant heard it. The jury found for the plaintiff, which carried with it a finding in its behalf upon all the material issues. Neither can defendant gather any consolation from the fact that the Rock Island Railway affirmed the agreement he had made with the Frisco Railway Company, because the ownership of the timbers had already passed from the Rock Island Railway to the plaintiff prior to the supposed affirmation by the Rock Island Railway.

5. The last contention of defendant is that, even though the timbers in controversy actually belong to plaintiff, yet, on account of the finding of the jury that defendant had performed services in rescuing the property in the sum of $75, this fact would give defendant a lien on the property and the right to continued possession until the said $75 was paid. It has been repeatedly decided by this court that it is against public policy to permit a lien to attach against the property of a municipality. The wisdom of this rule is forcibly demonstrated in the condition here presented. The public at large in Grant county in the vicinity of the bridges were vitally interested in having the bridges replaced at the earliest possible moment, and to permit the defendant to retain possession of the timbers needed for that purpose merely because he had a claim against the county, would operate to either force the county to pay a claim which it did not think it owed or to prevent the early replacing of the bridges for the lack of the necessary timbers. There are other divers reasons why this contention is not sound. Two of the county commissioners testified that they offered to pay defendant for his services before the property was replevied. Having refused to accept pay, he is in no position now to complain that he was not paid, nor should he be heard to say that he was entitled to the possession until he was paid for his services when he has refused to accept such pay when same was offered to him. His right to recover in this action a judgment against the county for his services upon the issues as presented might well be questioned, but as the point is not before us we refrain from passing upon the same.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.