STANDARD SURETY & CAS. CO. v.
KELLEY et al.

No. 31720.    June 18, 1946.

*170 P. 2d 251.*

Miley, Hoffman, Williams, France & Johnson, of Oklahoma City, for plaintiff in error.

I. L. Cook, J. B. Maxey, and H. H. Cook, all of Atoka, for defendants in error.

PER CURIAM. This is an action by L. P. Kelley against W. T. Pemberton, who was a member of the board of county commissioners of Atoka county, and Standard Surety & Casualty Company of New York, surety on Pemberton's bond, to recover on five causes of action upon claims for material furnished and labor performed in repairing bridges and machinery for Atoka county at the request and under contracts with Pemberton. These claims were assigned to plaintiff Kelley and upon presentation payment was refused for the reasons that at the time the contracts were made the appropriation for that purpose for the fiscal year had been exhausted and that some of the claims were fictitious and fraudulent. These claims amounted in the aggregate to the sum of $1,853.55. Plaintiff based his causes of action on 62 O.S. 1941 § 479, which, among other things, provides that a member of a board of county commissioners of a county and his bondsmen shall be liable in a civil action where such commissioner contracts for, incurs, acknowledges, approves, allows, or authorizes any indebtedness against his county in excess of the estimate made and approved by the excise board for such purpose for the fiscal year.

The defense was that Pemberton, in contracting the indebtedness and in approving claims therefor, was performing no official duty, and that therefore neither of them became liable upon refusal of payment of the claims.

The trial was to the court who, at the request of defendants, made findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of plaintiff for the entire amount claimed. Defendants have appealed. The defendant Surety Company has briefed the case and for reversal relies mainly upon the ground that the judgment is not supported by the evidence and is contrary to law.

The first cause of action related to claims of Mrs. S. E. Rives, doing business under the name of Rives Lumber Company, for certain lumber sold to the county for construction and repair of bridges at the instance and request of Pemberton and amounting in the aggregate to the sum of $423.70. These claims were approved by Pemberton and were sold and assigned by Mrs. Rives to the plaintiff. Upon presentation of the

claims for payment the board of county commissioners refused payment thereon for the reason that the appropriation made for such purposes for the fiscal year had been exhausted. Defendant surety company contends that it was not liable for the reason that Pemberton had no authority to enter into a contract with Mrs. Rives for the purchase of lumber; that such contract could only have been made legally by the board of county commissioners in regular session and that Pemberton had no authority under the law to approve these claims for payment; that in entering into such contract and approving the claims Pemberton was performing no official duty; that he was not acting by virtue of his office nor when the decisions are properly construed was he acting under color of office. Since this action was brought under the provisions of section 479 of the statute, supra, it is not necessary to discuss this question. This court has definitely settled this question against the contention of the Surety Company in the case of Smith Engineering Works v. Custer, 194 Okla. 318, 151 P. 2d 404.

Defendant surety company further contends that the act in question is unconstitutional in that the subject matter contained in such section was not properly expressed in the title of the act. This contention has also been decided adversely to the defendant in the above case.

The trial court ruled correctly in rendering judgment in favor of the plaintiff on his first cause of action.

The fifth cause of action relates to a claim for labor by Jack Jackson, and a claim of Roy Phillips for labor on county bridges, which labor was contracted for by Pemberton and claims approved by him and thereafter assigned by them to plaintiff Kelley. Payment of these claims was also denied by the board of county commissioners on the same ground that the claims in cause of action number one were denied. The same defense is made to this cause of action as to cause of action number one. What is said as to that cause of action, therefore, applies to this cause of action. The trial court ruled correctly in entering judgment in favor of plaintiff on his fifth cause of action.

As to the second, third, and fourth causes of action a different proposition is presented. These causes of action are based on claims of Chappell & Bagwell for material purportedly furnished and labor performed in repairing tractors and other machinery belonging to the county. These claims amounted in the aggregate to the sum of $1,419.15, which claims were assigned and sold by Chappell & Bagwell to plaintiff Kelly. The trial court found that these claims were fictitious and fraudulent; that Chappell & Bagwell performed no service for the county; that they repaired no trucks, tractors, or other machinery and performed no labor. The trial court further found that Joe Chappell of the firm of Chappell & Bagwell and Pemberton entered into a conspiracy to cheat and defraud the county of Atoka, and that in pursuance of such conspiracy Chappell was to prepare and file fictitious claims before the board of county commissioners which claims would then be approved by Pemberton and presented to the county for payment; that on different occasions such claims were prepared by Chappell, approved for payment by Pemberton and thereafter paid by the county. The trial court further found that these fictitious claims were presented by Joe Chappell for sale to plaintiff Kelley; that the claims had not then been approved by Pemberton for payment; that plaintiff refused to purchase the same until he had an opportunity to confer with Pemberton; that he afterwards did confer with him, that Pemberton represented to him that the claims were in all respects good and valid and that the same would be paid in the usual course of business and at plaintiff's request endorsed his approval upon the claims.

The trial court further found that when plaintiff presented these claims for payment the board of county commissioners refused payment thereon for

the reason that the claims were fictitious and fraudulent. The evidence clearly supports these findings. Under these findings and the evidence we do not think that the surety company is liable to the plaintiff on these claims.

It is obvious that upon refusal of payment of the claims, if they had remained in the hands of Chappell & Bagwell, the assignors, they could not have maintained an action against either Pemberton or his surety on the bond on such claims. This being true, neither can their assignee. The plaintiff Kelley in acquiring these claims acquired no greater right thereto than his assignors, Chappell & Bagwell, had. He took them subject to all the equities and defenses that existed against them in the hands of Chappell & Bagwell, his assignors. Keys v. Ponder, 118 Okla. 234, 226 P. 73; Cooke v. Sinopoulo, 194 Okla. 352, 151 P. 2d 791.

Plaintiff, however, contends that since Pemberton represented to him that the claims were in all respects valid and would be paid in due course of business and endorsed his approval thereon, both Pemberton and surety company became liable to him under section 479, supra. This contention cannot be sustained. Section 479, supra, does not purport to make an officer and his bondsmen liable under circumstances such as are here presented. It only purports to make such officer and his bondsmen liable where claims are contracted for, or indebtedness created, acknowledged, approved or allowed for payment in excess of estimate made by the excise board for such purpose for the fiscal year. It is quite obvious that the claims referred to in these causes of action do not come within the provisions of this section.

It is probably true, as contended by plaintiff, that defendant Pemberton is liable to plaintiff. If this be true, such liability does not exist on the assigned claims. It exists only by virtue of the fact that Pemberton falsely and fraudulently represented to plaintiff that the claims were good and valid claims and would be paid and in entering his endorsement of approval thereon, thereby inducing him to purchase the claims. These acts of Pemberton, however, could not bind the defendant surety company. In making such representations and at the request of plaintiff endorsing his approval upon the claims, Pemberton was not acting in any official capacity. In performing such acts he was acting neither by virtue of his office nor under color of office.

A case similar to the case at bar was presented to the Circuit Court of Appeals in the case of National Surety Co. v. State Savings Bank, 156 Fed. 21, 14 L. R. A. (N.S.) 155. In that case W. P. Bourne, a deputy county assessor, executed numerous county warrants made payable to a fictitious payee, which warrants he caused to be signed by the chairman of the board of county commissioners. Mr. Bourne then endorsed the name of fictitious payees upon the warrants, presented them to a bank for payment, and upon his representation that these warrants were valid warrants the bank purchased the same. The court held that no cause of action existed in favor of the bank against the surety company for any loss it might have sustained in purchasing the warrants. The court held the warrants nonnegotiable; that by its assignment the bank acquired no greater right to the warrants than had the supposed fictitious payees, that it took the warrants subject to all defenses and equities that existed against the warrants in the hands of these fictitious payees, and that since such fictitious payees could not have maintained any action against the surety company on the refusal of payment of the warrants, neither could the bank. In that case the court further said:

"The misconduct of Bourne in much of what he actually did and in what was necessarily involved, namely, in falsely representing to the bank that the orders were genuine, that the payees had paid money to the county treasurer for taxes, and were entitled under the law to an order refunding the amount so paid, that they were actual persons instead

of myths; and his further misconduct in fraudulently signing the mythical names to the assignments, in negotiating with the bank, and wrongfully securing its money, were altogether personal in their character . . . Within the fair and reasonable meaning of the bond and statutes in question, Bourne's personal, as distinguished from official, acts caused the assumed injury which the bank sustained."

What is there said applies to the case at bar.

Without attempting to lay down a definite rule by which it can be determined as to whether an act of an officer constitutes a personal as distinguished from an official act, we hold that the acts committed by Pemberton and here relied upon constitute personal as distinguished from official acts and that the surety on his bond is therefore not liable.

We therefore conclude that the trial court erred in rendering judgment against defendant Standard Surety & Casualty Company on plaintiff's second, third, and fourth causes of action. As to defendant Pemberton a different proposition is presented. He has appealed from the judgment of the lower court and has filed in this court a petition in error. He has failed to brief the case. He has evidently abandoned his appeal. The record as to him discloses no fundamental error. The judgment as to defendant Pemberton is therefore affirmed. As to defendant Standard Surety & Casualty Company, the judgment is affirmed as to the first and fifth causes of action and reversed as to the second, third, and fourth causes of action and the causes remanded as to such causes of action, with directions to enter judgment thereon in favor of the said defendant.

HURST, V.C.J., and OSBORN, BAYLESS, WELCH, and CORN, JJ., concur. RILEY and DAVISON, JJ., dissent.

———

DAVISON, J. (concurring in part and dissenting in part). I concur in the majority opinion relative to plaintiff's first and fifth causes of action, but dissent as to the reasoning and conclusion reached as to the second, third, and fourth causes of action. The majority opinion practically concedes Pemberton's liability thereon and in my opinion presents no substantial basis for denying recovery on his bond.

I agree that there is no liability with reference to the particular claims involved in that part of the action under 62 O.S. 1941 § 479, but this conclusion, of course, does not preclude plaintiff's right of recovery on the causes of action in question.

It will be seen by an examination of the opinion cited therein that the majority's holding that plaintiff cannot otherwise recover on those causes of action is based entirely upon matters discussed in National Surety Co. v. State Savings Bank, 156 Fed. 21, 14 L.R.A. (N.S.) 155. The first one of these is the matter of equities existing against plaintiff by reason of having taken assignments of fictitious claims. The equitable principle cited would perhaps apply if plaintiff were seeking recovery against the county or the defendants on the claims as evidence of indebtedness of which he had purchased assignments, but that is not the case. The basis of plaintiff's suit is the misconduct of a public officer. The wrong to him arises ex delicto as in tort, though the remedy sought for Pemberton's malfeasance is afforded by a contract, namely, Pemberton's bond. Therefore, whether Pemberton has been guilty of malfeasance in office does not depend upon whether Kelley could recover against anyone on the claims or any other such purported evidence of a debt or contract to pay money. Consideration of whether the instruments involved could in themselves form the basis of a cause of action may have been material in the National Surety Company Case, supra, for there the surety on the auditor's bond was seeking subrogation to the rights of the county. This was to obtain reimbursement for having made good the county's loss in compliance

with the state court's decision in Ramsey County v. Sullivan, 89 Minn. 68, 93 N.W. 1056, in which the question of Bourne's misconduct in office was determined and his superior officer's bondsmen was held liable to the county. In the federal court opinion the issue of subrogation was resolved by determining what the bonding company's right in the "shoes" or position of the county would have been against the bank. In doing this the court formulated the hypothetical question of whether the bank could have recovered against the surety if the county had refused to pay the orders upon their presentation by the bank, and concluded that it could not, for the reason that the official misconduct which constituted the basis of recovery in Ramsey County v. Sullivan, supra, was not the proximate cause of the bank's purchase, and further pointed out that if the county had refused to pay the bank on the refunding orders, such refusal would not have been wrongful and the bank could not have forced payment by suit because the equities in favor of the county as against the bank, as an assignee from fictitious assignors, would have been in favor of the county—that as such assignor it could only have been held to have taken them subject to the infirmities existing therein. To me, it is obvious that the equitable principle concerning assignments thus discussed by the federal court in answering the hypothetical question it propounded has no more to do with the question of whether Pemberton was guilty of official misconduct with reference to one who is legally entitled to his bond's protection than it had to do with a decision of the same question in Ramsey County v. Sullivan, supra. In this case the defendant surety company's sole reference to National Surety Co. v. State Savings Bank, supra, appears on page 104 of its brief, where the case is cited as authority for the following assertion:

"We submit that the assurance given by Mr. Pemberton in this street conversation, in effect that this fraudulent and fictitious claim would be paid out of appropriations made for expenses for the ensuing fiscal year, was not official misconduct for which the surety on his bond would be liable."

This statement obviously has reference to a conversation held on a street in Atoka in which Pemberton told Kelley, concerning the largest of the claims, that it would be "as good as money after July 1." This oral representation may be similar and comparable to the representations made by Bourne in negotiating the sale of the refunding orders to State Savings Bank, which the federal court held in the National Surety Company Case, supra, were not the proximate cause of the bank's purchase, as distinguished from his official misconduct in wrongfully signing the orders in his official capacity that was held to be official misconduct in Ramsey County v. Sullivan, supra. But here, Kelley's cause of action does not depend on such representations. The evidence shows, and the court found, that Pemberton did more than speak to Kelley about the claims—he placed his stamp of approval on them in the only ostensibly official way that it could then be done, i.e., by signing his name on the space provided on the face of the official claim forms to indicate approval by the "officer" (an act which, as far as I can discover from the surety company's brief, it does not question as the proximate cause of Kelley's purchase, but, if so, such contention would be nullified by the evidence and the effect of the trial court's judgment to the contrary), which said space is obviously provided on such official forms to facilitate compliance with 62 O.S. 1941 § 314, which reads in part as follows:

"No claim shall be paid from appropriation made for the maintenance of any county or other municipal subdivision until approved by the officer, board, or commission having charge of the office or department for the maintenance of which the appropriation is available and from which such payment is proposed to be made. . . ."

In seeking to demonstrate that Pem-

berton's signature on the space described was not an official act, counsel argue convincingly that the quoted statute does not contemplate the approval of a county commissioner for claims incurred in connection with the maintenance of roads in his district. Whether it does or does not has never been decided by this court, and the fact that as a possible consequence such approvals of such claims may be required in some county administrations out of an abundance of precaution against violating the law lends no support to the defendant surety's position. However, as I view the matter, whether that statutory provision imposes upon a county commissioner the duty of approving claims for county road expenditures in his district (as the officer in charge of that "office" or "department") before submission to the board of county commissioners as a whole for its approval or disapproval, is not conclusive of the decisive question in this case. The fact remains, as may be inferred from the evidence, that the practice had been followed in Atoka county as a more or less natural or logical consequence of said county's custom of allocating to the different commissioner's districts therein certain proportionate parts of its road maintenance apportionment, and giving each of the commissioners the prerogative of contracting expenses of road maintenance in his district to be paid from that portion of the road fund thus allocated to it. However reprehensible this practice may be (Board of Commissioners of Carter Co. v. Landrum, 163 Okla. 199, 21 P. 2d 736), we all know as a matter of common knowledge that it is still followed in many counties. But the fact that any operation connected with the practice is illegal or not provided nor required by statute of the county official performing it, does not mean that in such performance he is not acting as a public official in respect to liability on his bond. It would perhaps make a difference whether he was acting legally or illegally under the decisions of some courts that still follow the old rule and deny liability for

acts done colore officii as they distinguish them from acts done virtute officii. But as revealed in 43 Am. Jur. at pg. 188:

"This distinction is . . . now ignored by the majority of courts, on the ground that if carried to its legitimate conclusion there would never be any liability but his own for the wrongful act of an officer; the sureties are held liable if the act is done either by virtue of office or under color of office, but if the officer acts without any actual or apparent authority whatever, the sureties are not liable."

As early as 1890, Mr. Mechem, in his work on Public Officers, at page 179, said:

". . . The rule of liability is not only supported by the soundest reasons of policy but is maintained by the great preponderance of authority, being adopted in California, Iowa, Illinois, Kentucky, Maine, Massachusetts, Michigan, Missouri, Nebraska, New York, Ohio, Pennsylvania, Texas, Virginia, Washington, the District of Columbia, and the Supreme Court of the United States."

Counsel for the surety recognize that this court has also questioned the soundness of the above described distinction (Ingles v. Hotze, 191 Okla. 378, 130 P. 2d 302) applied in earlier decisions (Hughes v. Board of Com'rs of Oklahoma County, 50 Okla. 410, 150 P. 1029, and cases therein cited), but they seek to explain away the ultimate or full significance of this fact by saying that any apparent abandonment of the doctrine of distinction has arisen out of a confusion of terms and classification rather than in principles enunciated or their application to concrete cases, and they cite a few judicial expressions apparently intended to show that instances in which officers have been held liable on their bonds for acts done colore officii are limited to cases involving law enforcement officers for trespass to person or property. The authorities generally do not support this argument and I have no doubt that in the present case as much of an action-

able injury has been done to Kelley with these wrongfully signed claims as has in many cases been accomplished by wrongfully signed or issued warrants of arrest, writs of attachment and a variety of apparently official but invalid process. The real distinction is not between the various wrongful acts that may be committed by various public officials, but in any case the decisive query is: Can the particular conduct be classified as official misconduct or misconduct in office? And the same principles can be applied in correctly answering this question if the document involved pertains to the official duties of the officer, whether it be a writ of process, a refunding order, a county warrant, a county claim, or whatever other such instrument it may be. In American Guaranty Co. v. McNiece, 111 Ohio St. 532, 146 N.E. 77, 39 A.L.R. 1289, it was said:

"A majority of this court are of the opinion that when a court once reaches the conclusion that the sureties are liable on a bond for the faithful performance of the duties of their principal, for any wrongful act done colore officii, that *any distinction between various wrongful acts* done colore officii is artificial and illogical.

"If for certain wrongful acts done by an official to the injury of another, such wrongful acts being . . . perpetrated in his *official capacity as distinguished from his individual capacity,* there should be a liability of his bondsmen; . . ." (Emphasis ours.)

And in Erickson v. Anderson et al., 78 Mont. 1, 252 P. 299, it is said:

" 'The trend of modern judicial decision, even in states formerly adhering to the distinction, is entirely to disregard it and hold that:

" 'The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond and must be made good by those who signed it.' Murfree on Official Bonds, Sec. 211.

"In other words, the later decisions hold that the surety on an official bond is liable for both acts of nonfeasance and misfeasance of an officer assuming to act officially, whether at the outset vested with authority to act in some manner or acting entirely without authority, but relying upon his official position to enable him to commit the act." (Citing a long list of authorities.)

See, also, Hall v. Tierney, 89 Minn. 407, 95 N.W. 219, to the same effect.

And in Lynch v. Burgess, 40 Wyo. 30, 273 P. 691, 62 A.L.R. 849, the following excerpt from 24 R.C.L. pp. 965, 966, is quoted with approval:

". . . according to many of the cases it is clear that the authority of an officer to do a particular act is not the proper criterion of his liability, for the very simple reason that the basis of liability in every instance is want of authority, whether exercised under process or not; and so it is held to be rather incongruous that the rule should be relaxed insofar as the liability of an officer's sureties are concerned, where the officer goes to the extreme of acting in an apparently official capacity without any process whatever. The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? . . . Under such a test as this, it is clear that the distinctions drawn out at interminable length in the authorities as between acts virtute officii and acts colore officii would be deemed of little if any use in practice, inasmuch as from their very nature, they are mere argumentations in a circle."

Under the authorities above cited it will be seen that it is not necessary in establishing liability on a public official's bond to show that his authority to do the act or acts complained of was actual or real authority or was a duty specifically imposed upon him by law. (Of course, the statutes specifying his duties do not contemplate his acting illegally in performing them.) It is enough that his authority for such conduct is apparent, or more specifically, that it justifiably *appears* actual or real.

Our statutes impose upon county commissioners the duty of maintaining the county road system, empowering them to "adopt such methods as are necessary to maintain continuously in the best condition practicable the entire mileage of this system . . ." 69 O.S. 1941 § 324. County commissioners are empowered to direct the expenditure of the county highway construction and maintenance fund (69 O.S. 1941 § 262), and even to draw therefrom pay at the rate of $3 per day in excess of the time now provided by law for discharging their other usual and customary duties for their work in supervising "the general progress and advancement of road and bridge construction" in their own districts, "and if it seems advantageous and desirable and it is agreed to by the other members of the board, one may devote himself more exclusively to the field supervision of road work and receive the pay and allowances that would otherwise have accrued to the county commissioner in whose place he is acting." 69 O.S. 1941 § 292. In view of these statutory provisions, can it be said that supervision of the purchase of repairs and supplies for road machinery used on the county roads in his district is not within the scope of the official duties and powers of a county commissioner? Power or duty to supervise such purchases implies or carries with it the power or duty to supervise payment for same. By this I do not mean to infer that any single county commissioner can enter into a contract of purchase which will bind the county to pay for materials, equipment, or services ordered without approval by the board as a whole in a regular meeting held in all respects as provided by statute (Board of County Com'rs of Pontotoc County v. Carey, Lombard, Young & Co., 178 Okla. 13, 61 P. 2d 736), but the fact that he cannot do so under our statutes and decisions would not prevent all wrongful acts that he might commit in carrying out his statutory duties in connection with such expenditures, from being deemed colore officii or done under color of his office in an action or actions on his bond. (In connection with the Board of Co. Com'rs of Pontotoc County Case, supra, as to situations relative to the statutory duties of boards of county commissioners in which counties have been held liable on contracts entered into without strict statutory compliance, see Board of Com'rs of Carter Co. v. Landrum, supra; Board of Com'rs of Garfield County v. Enid Springs Sanitarium Hospital, 116 Okla. 249, 244 P. 426, and Nolan v. Board of Com'rs of Grant Co., 51 Okla. 320, 152 P. 63.) Can he not be said to be acting officially, as concerns such liability, when he gives an apparently official sanction to claims for such county needs even though his act does not bind the county to pay them? I think so, and therein lies the fallacy of the bulk of argument in the surety's briefs. Even though his acts with reference to projects which by statute are made the responsibility of county commissioners may not be performed in strict compliance with the law, still he is acting on official or county business rather than as an individual, volunteer, or private citizen.

In this case it may be assumed that Kelley knew, as most citizens do, that Pemberton, along with the other county commissioners of Atoka county, was charged with the duty of supervising county road repair and construction in said county. It may also be inferred from the evidence of Kelley's conduct with reference to the claims in question and his previous experience with others that he knew that the other county commissioners allowed Pemberton to supervise the expenditure of funds for road purposes in his district, that he knew Pemberton, as a member of the board from that district, had a substantial voice in the payment of such claims, and because of these facts, it was reasonable for him to believe that with Pemberton's approval endorsed thereon he had some assurance that the claims were just debts for materials or

services actually furnished in his district, and with such endorsement they were more likely to be paid than without it. To one in Kelley's situation, Pemberton's endorsement was at least an apparently official act, and in view of the facts and statutes above cited, Pemberton justifiably appeared to have the authority to officially approve the claims in such manner. The evidence shows plainly that without such approval Kelley would not have purchased the claims. And had it not been for his official position, Pemberton would not have been enabled by such endorsement to help work this fraud on Kelley. As said in Board of Com'rs of Ramsey County v. Sullivan, supra, Pemberton "took advantage of the opportunity" afforded by his office to help defraud Kelley, and had it not been for his office and his apparent duties and powers in connection therewith, it can easily be assumed that he would not have had such opportunity. Doubtless, Kelley and most other citizens of his intelligence and experience would have placed no reliance on Pemberton's approval if he had been a sheriff, a county assessor, or some other public official or private citizen having no authority or nothing to do with the incurrence of valid claims against the county road fund. In this connection, see City of Butte v. Bennetts, 51 Mont. 27, 149 P. 92, at page 93.

In the present case there is no contention that Pemberton's endorsement of his approval on the claims in question was not the proximate cause of Kelley's loss, no intimation that said act was performed for any purpose or with any intention except that it should be relied upon by Kelley as a bona fide purchaser of the claims, no proof that Kelley was not a bona fide purchaser, nor any intimation that he had any notice or knowledge of the fraudulent conspiracy Chappell and Pemberton had entered into. And incidentally, there is no contention that Kelley is not such a party as is entitled to the benefit of the securty provided by Pemberton's bond. As to this, see Crews v. American Surety Co. of New York, 188 Okla. 486, 110 P. 2d 1108; generally, see cases cited in Am. Jur. vol. 37, pg. 893, note 19, and vol. 43, pg. 206, note 8; annotation 19 A.L.R. 73.

In accord with the foregoing views, I am of the opinion, as was the trial court, that Pemberton's wrongful endorsement of the purported claims of Chappell & Bagwell constituted a failure to "faithfully perform" the duties of his office "imposed upon him by law" within the meaning of his official bond. Such conclusion is not intended to indicate my views upon the question of the liability of a public official or his bondsmen for failure, refusal, or neglect in performing discretionary or ministerial acts, without culpable intent. In this case, however, where it is plain that a public official has not only unfaithfully performed his duties but has intentionally taken advantage of his position to work a fraud on an innocent citizen, I have no doubt of the justness and correctness of the conclusion above announced.

Accordingly, it is my opinion that the judgment of the trial court should have been affirmed in toto, and I therefore respectfully dissent to the majority's reversal of said judgment as to plaintiff's second, third, and fourth causes of action.

I am authorized to announce that Justice RILEY concurs in the foregoing views.