Margaret D. BYNUM, Plaintiff in Error,

v.

WESTERN SURETY COMPANY OF SIOUX FALLS, SOUTH DAKOTA, a Corporation, The Hartford Accident and Indemnity Company, Hartford, Connecticut, a Corporation, W. A. Chapman, Roger J. Brown and J. N. Netherton, Defendants in Error.

No. 36978.

Supreme Court of Oklahoma.
April 1, 1958.

Carder & Carder, Hobart, Ross Cox, Hollis, for plaintiff in error.

Robert B. Harbison, Stansell Whiteside, Ryan Kerr, Altus, for defendants in error.

HALLEY, Justice.

Margaret D. Bynum filed this action in the District Court of Jackson County against the three County Commissioners of that County, W. A. Chapman, Roger J. Brown and J. N. Netherton and Western Surety Company and The Hartford Accident & Indemity Company, corporations, to recover damages for the wrongful death of her son. The corporations named were the sureties upon the bonds of the County Commissioners named. We shall refer to the parties as plaintiff and defendants as they appeared in the trial court.

The defendants demurred to the amended petition of the plaintiff and on June 7, 1955, the court overruled the demurrer as to the three individual defendants named as County Commissioners, but sustained the demurrer as to the two surety companies named. Upon the failure of the plaintiff

to plead further the action was dismissed as to the surety companies. The plaintiff gave notice of appeal and has elected to appeal upon the record.

Plaintiff alleged that the individual defendants as County Commissioners were negligent in failing to inspect, repair and warn of the dangerous condition of a bridge on a county highway in Jackson County; that she was the mother of a son who lived with her and contributed to her support; that the Commissioners named were charged by the laws of Oklahoma with the responsibility of maintaining public county bridges in their county that were over 20 feet in length, which included a bridge over "Salt Fork of Red River," erected on a county road about two miles southeast of Olustee in Jackson County; that about two years prior to the accident whereby her son was injured, a flood had torn out a span of this bridge, and that defendants had never replaced the destroyed span or repaired the bridge which was long and had curves which were not noticeable until after entering upon the bridge and traveling thereon for some distance; that the damaged bridge was very dangerous to any one attempting to use or cross it; that defendant Commissioners had notice of the dangerous condition of the bridge and had available sufficient funds for repair, but made no effort to repair it and negligently permitted it to remain in its dangerous condition for almost two years, erecting no barricades or warning signs of its dangerous condition.

Plaintiff further alleged that her son, Robert F. Bynum, did not know of the condition of the bridge when he attempted to cross it on December 7, 1952, by driving his automobile upon and over the bridge with no warning of its dangerous and damaged condition, and in attempting to drive across it his car fell through and off the bridge, resulting in injuries from which he died.

■ The record discloses that the bonds of the Commissioners are in the sum of $2,500 each and each bond was approved by the county judge and also bears the approval of the three Commissioners when filed with the county judge. Defendants contend in their brief that the bonds do not appear to disclose that the amount of the bonds was fixed by the county judge, as required by 19 O.S.1951, Section 323. We think the approval of the bonds in the sum of $2,500 each is sufficient to warrant the presumption that the judge fixed the amount of the bonds.

■ The plaintiff contends that the court erred in sustaining the demurrer of Western Surety Company and The Hartford Accident & Indemnity Company, sureties on the Commissioners' bonds to the amended petition of the plaintiff. The second proposition of plaintiff is that the court erred in dismissing her case as to the sureties after their demurrer had been sustained and plaintiff had declined to plead further. We think that in view of the record before us these two propositions may be considered together. If the trial court was justified in sustaining the demurrer as to the sureties on the bonds of the Commissioners, then it was not error to dismiss the action as to the sureties when the plaintiff declined to plead further.

The principal issue involved here is a correct interpretation of Section 323, 19 O.S.1951, which provides as follows:

"Every county commissioner before entering upon the duties of his office shall execute a bond in the penal sum of not less than one or more than five thousand dollars, the amount and sufficiency of such bond to be determined by the county judge, and said bond shall be filed and kept in the office of said judge."

Plaintiff cites Section 76, 12 O.S.1951, which is as follows:

"When an officer, executor or administrator within this State, by misconduct or neglect of duty, forfeits his bond or renders his sureties liable, any person injured thereby, or who is, by law, entitled to the benefit of the se-

curity, may bring an action thereon in his own name, against the officer, executor or administrator and his sureties, to recover the amount to which he may be entitled by reason of the delinquency. The action may be instituted and proceeded in on a certified copy of the bond, which copy shall be furnished by the person holding the original thereof."

In support of the Section just quoted plaintiff cites Smith Engineering Works v. Custer, 194 Okl. 318, 151 P.2d 404 and Standard Surety & Casualty Co. of New York v. Kelley, 197 Okl. 292, 170 P.2d 251, 253. Both of these cases are based upon alleged violation by a county commissioner incurring indebtedness in behalf of his county, " * * * in excess of estimate made and approved by the excise board for such purpose for such current fiscal year. * * *" Section 479, 62 O.S.1951, plainly says that when a commissioner violates that provision, such indebtedness so unlawfully incurred " * * * may be collected by civil action from any official contracting * * * or from his bondsmen."

In each of these cases an express statutory authority existed as a basis for holding the sureties on the bonds liable. It will be noted that Section 323, 19 O.S. 1951, quoted above makes no provision that sureties on the bonds of county commissioners there required may be made to respond for negligence of the county commissioners or for any unlawful act causing personal injury or death to another. No decision is cited showing such right of recovery.

Plaintiff also cites Ingles v. Hotze, 191 Okl. 378, 130 P.2d 302, where the surety was sued on the statutory bond of a sheriff. The conditions for the bond required of a sheriff are prescribed by Section 512, 19 O.S.1951, and one of the conditions is the "faithful performance" of his duties. No such condition is found in the statute which requires a bond by a county commissioner.

It is not disputed that contracts of sureties are strictissimi juris and that sureties are not bound beyond the strictest terms of their commitment and that their liability cannot be extended beyond the terms of their contract.

The statutory requirements for the bonds of other county officers than county commissioners all provide that their bonds require the officer to faithfully discharge the duties of his office as required by law, but such provisions do not appear in the above quoted Section 323, requiring county commissioners to give a bond. See the case of Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198, 200, in which it is said:

" * * * In the absence of anything appearing to show a different intention in the giving of a statutory bond of a public officer, it will be presumed that the intention of the parties was to execute such a bond as the law required; and, although its terms may bear a broader construction, the liability of the sureties will be confined to the measure of liability as contemplated by the law requiring such bond. A bond which contains the conditions required by statute, and also conditions in excess of those specified by statute, is valid, so far as it imposes obligations authorized by the statute; but the stipulations which are in excess of it may be rejected as surplusage. * * *"

The Board of County Commissioners is the executive branch of the county, authorized to act in behalf of the county in its financial and contractual affairs. No other county officers may bind the county or make it liable to third parties. In view of these facts it is reasonable to conclude that the bond required of the commissioners is for the purpose of protecting the county against losses that might occur from the wrongful acts of the commissioners vested with such important powers with respect to the financial welfare of the county.

The action of the trial judge in sustaining the demurrer as to the sureties on the Commissioners' bonds is hereby affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, JOHNSON and CARLILE, JJ., concur.

WILLIAMS, BLACKBIRD and JACKSON, JJ., dissent.

WILLIAMS, Justice (dissenting).

The only authority of any kind cited by the majority opinion in support of its holding is the case of Lowe v. City of Guthrie, 4 Okl. 287, 44 P. 198, 200, decided by the Supreme Court of Oklahoma Territory in 1896. Such case does not hold that the bondsmen of a public official are not liable on such bond for the failure of such public official to perform the duties of his office. On the contrary, such case affirms the liability of the bondsmen in such case and merely holds that such liability does not extend to failure to perform acts which are not legally prescribed duties of the officer bonded.

The majority opinion concedes that the bonds here sued on are actually conditioned upon the faithful performance of the duties of the office and that the petition alleges a failure of the officers bonded to perform a duty imposed by law. It then concludes, however, that since the statute requiring county commissioners to furnish a bond does not provide that such bond should be conditioned upon the "faithful performance" of the duties of the office, the insertion of such a condition in the bonds here sued on was in excess of the requirements of the statute requiring such bond and should be treated as surplusage and rejected as such, the case of Lowe v. City of Guthrie, supra, being relied on as authority for such conclusion. The language actually used in the opinion in Lowe v. City of Guthrie, supra, is as follows:

"A statutory bond is one required by some statute. Where a statute required a public officer to execute an official bond, such bond is a statutory bond. The sureties on an official bond contract with reference to the law requiring such bond and regulating the duties of the officer, and the law of the office is, in effect, part of the contract, and has the same effect as though its provisions has been incorporated into the bond itself. The sureties are not bound beyond the strict terms of their engagement, and their liability cannot be extended by implication beyond the terms of their contract. The sureties of Millikan undertook that he should faithfully perform all the duties required to be performed by him as clerk; that is, they became responsible for the faithful discharge of the duties properly appertaining to the office, and the extent of their liability must be determined from the bond itself, from the law in force at the time of the execution of the bond, and the intention of the parties at the time of the delivery of the bond. In the absence of anything appearing to show a different intention in the giving of a statutory bond of a public officer, it will be presumed that the intention of the parties was to execute such a bond as the law required; and, although its terms may bear a broader construction, the liability of the sureties will be confined to the measure of liability as contemplated by the law requiring such bond. A bond which contains the conditions required by statute, and also conditions in excess of those specified by statute, is valid, so far as it imposes obligations authorized by the statute; but the stipulations which are in excess of it may be rejected as surplusage."

It therefore appears to me that the correct statement of the law announced in such case would be that the extent of the liability of the sureties on an official bond must be determined from the bond itself, from the law in force at the time of the execution of the bond and the intention of the parties at the time of the delivery of the bond. It is true that the statute requiring every county commissioner to execute a bond before entering upon the duties of his office does not specify that the condition of such bond shall be the faithful performance of the duties of such office, but neither does such statute prescribe any

other condition for such bond. The statute, 19 O.S.1951, sec. 323, reads as follows:

"Every county commissioner before entering upon the duties of his office shall execute a bond in the penal sum of not less than one or more than five thousand dollars, the amount and sufficiency of such bond to be determined by the county judge, and said bond shall be filed and kept in the office of said judge."

Under the holding of the majority opinion, no valid condition of any kind could ever be inserted in the bond of a county commissioner, because, since the statute requiring such bond did not prescribe the condition thereof, any condition placed therein would be in excess of that required by the statute requiring the bond and should be treated as surplusage and rejected as such, and there could never be any liability on the bond of a county commissioner because there could be no valid condition therein and consequently there could never be a breach of condition rendering the surety liable.

The legislature certainly had some purpose in requiring every county commissioner to execute a bond before entering upon the duties of his office, and I think it clear that such purpose was to provide at least some measure of security for the proper performance of the duties of a county commissioner before allowing any such county commissioner to undertake such duties. Such conclusion is supported by the following language found at 43 Am. Jur. 173, Public Officers, sec. 394:

"Public officers are generally required to furnish bonds for the faithful performance of the duties pertaining to their offices, and may be required, also, to renew their bonds. The bond of a public officer is in effect a contract between the officer and the government, binding the officer to discharge the duties of his office,—a collateral security for the faithful performance of those duties, and an obligation binding the sureties to make

good the officer's defaults. Official bonds are required not for the benefit of the office holder, but for the protection of the entire ciitzenship. They must be given as a condition precedent to a proper qualification for office and for the assumption of the responsibility thereof, and the office holder must yield to the mandates of the law requiring the bond."

At 43 Am.Jur. 175, Public Officers, sec. 398, it is said:

"In general, it may be said that the forms of official bonds are substantially the same as to all officers. Although the statute may set forth the forms of the bond required by it, this is not always done. Very often only general directions to give a bond for the faithful performance by the officer of his official duties are contained in the statutes."

And in sec. 401 of the same authority, the following language is found:

"A public officer's duties are defined and specified by law, and although his official bond may recite them there is, at least in the absence of some provision of the law requiring it, no necessity for doing so. A bond requiring the faithful performance of official duty is as binding on the principal and his sureties as if all the statutory duties of the officer were inserted in it."

Even more pertinent is the following language used in the opinion of this court in Smith Engineering Works v. Custer, 194 Okl. 318, 151 P.2d 404, 408:

"Under Title 19 O.S.1941, § 323, a county commissioner is required to execute a bond, before entering upon the duties of his office, in an amount not to exceed five thousand dollars, the amount and sufficiency of the bond to be determined by the county judge. In compliance with this statute the commissioner executed a bond, the conditions of which obligated the sureties if the commissioner did not faithfully perform all his duties as required by

law. A violation of Section 479, above quoted, was unlawful, which makes the commissioner personally liable together with his bondsmen."

The same situation is presented by the case at bar, except that a different statutory duty is alleged to have been violated.

The majority opinion also holds or concludes that the bond required of the county commissioners is for the purpose of protecting the county against losses that might occur from the wrongful acts of the commissioners vested with such important powers with respect to the financial welfare of the county, and infers that the only obligation of the sureties is to protect the county against loss and that only the county could institute an action on such a bond. There is nothing in either the statutes of this state, the previous holdings of this court, or the bonds themselves, which would support such a theory. 12 O.S.1951, sec. 76, provides in substance that when an officer within this state by misconduct or neglect of duty forfeits his bond or renders his sureties liable, any person injured thereby may bring an action thereon in his own name against the officer and his sureties to recover the amount to which he may be entitled by reason of the delinquency. Such statute was held to authorize injured individuals to maintain an action on the official bond of a county commissioner, individually sued in the same action, in the cases of Smith Engineering Works v. Custer, supra, and Standard Surety & Casualty Company v. Kelley, 197 Okl. 292, 170 P.2d 251. Such statute was also held to authorize an action by an individual against the bondsmen of a court clerk in Ahsmuhs v. Bowyer, 39 Okl. 376, 135 P. 413, of a State Treasurer in Western Paving Company v. Board of Commissioners of Lincoln County, 183 Okl. 281, 81 P.2d 652, of a State Bank Commissioner in Crews v. American Surety Co. of N. Y., 188 Okl. 486, 110 P.2d 1108, and of a Superintendent of The Bureau of Criminal Identification and Investigation in Maryland Casualty Co. v. Alford, C.C.A.10, 111 F.2d 388, affirming Alford v. McConnell, D.C., 27

F.Supp. 176, certiorari denied Maryland Casualty Co. v. Alford, 61 S.Ct. 27, 311 U.S. 668, 85 L.Ed. 429. It is true that the recoveries against the individual commissioners and their bondsmen in both Smith Engineering Works v. Custer, supra, and Standard Surety & Casualty Co. v. Kelley, supra, were based on violations of 62 O.S. 1941, sec. 479, which provides, among other things, that any indebtedness contracted or incurred in violation of such statute shall not be a charge against the municipality whose officer or officers contracted, incurred, acknowledged, approved, allowed or authorized or attested the evidence of such indebtedness, but may be collected by civil action from any such official or his bondsmen. But the very existence of such statute, in itself, negatives completely the suggestion in the majority opinion that the sole purpose of the bond required of each county commissioner is to protect the county only, and that only the county could institute an action on such bond. Furthermore, the above cited cases plainly hold that it is the provisions of 12 O.S.1951, sec. 76, above cited, which authorize an individual to bring an action in his own name on the official bond of a county commissioner, and the only purpose and effect of 62 O.S.1941, sec. 479, above cited, insofar as any action or recovery upon a bond is concerned, was to remove from any such action any question as to whether the commissioner was acting by virtue of office or under color of office.

The syllabus in the case of Crews v. American Surety Company of New York, supra, is as follows:

"In an action against the State Bank Commissioner and the surety on his official bond conditioned upon the faithful discharge of the duties required of his office by law, a petition alleging facts showing that plaintiffs suffered damage by reason of certain acts of willful misconduct in office on the part of said commissioner in direct violation of his fixed statutory duties, held sufficient as against demurrer of surety."

Under 19 O.S.1951, sec. 323, above quoted, a county commissioner is required to execute a bond, before entering upon the duties of his office, in an amount not to exceed $5,000, the amount and sufficiency of the bond to be determined by the County Judge. In compliance with such statute defendant commissioners each executed a bond in the amount of $2,500, the conditions of which obligated the surety if such commissioner did not faithfully perform all his duties as required by law, which bonds were approved by the County Judge. Plaintiff's petition alleges a wilful and wanton failure of defendant commissioners to perform certain duties imposed upon them by law and resulting damage to plaintiff, which in my opinion states a cause of action against both such commissioners personally and their bondsmen. I think the judgment should be reversed and the cause remanded with instructions to overrule the demurrer of the defendant surety companies, and I therefore respectfully dissent.

I am authorized to state that Mr. Justice BLACKBIRD concurs in the views herein expressed.